FOLSOM v. FERNSTROM, et al.

No. 2470. Decided August 21, 1913 (134 Pac. 1021).

1. PARTNERSHIP—ACTION FOR ACCOUNTING. Where a partnership contract itself was not entered into for any fraudulent, wrongful, or unlawful purpose, the fact that the partners had practiced fraud in a partnership deal in obtaining quitclaim deeds

from the heirs of an estate was not a defense by one partner to a demand for an accounting by the other.  (Page 438.)

2. APPEAL AND ERROR—REVIEW—EQUITY CASE.  While, in an equity case on appeal on questions of both law and fact, the court can set aside, and direct, or make other findings, it is a power which has been, and ought to be, sparingly exercised on evidence which is in conflict.  (Page 438.)

3. PARTNERSHIP—REPRESENTATION OF FIRM BY PARTNER.  Though one partner can contract for and pay reasonable compensation to obtain a bond, if necessary to effect and accomplish a partnership transaction or deal, he cannot, as compensation for obtaining a bond, take a person in as partner, or give him an undivided interest in the partnership.  (Page 439.)

APPEAL from District Court, Third District; *Hon. T. D. Lewis,* Judge.

Action by Hyrum P. Folsom against F. S. Fernstrom, and another.

Judgment for plaintiff. Defendants appeal.

MODIFIED AND REMANDED.

*Warner & Maginnis* for appellants.

*Booth, Lee, Bodger, Rich & Parke* for respondent.

STRAUP, J.

The plaintiff by this action seeks an accounting respecting partnership dealings between him and the defendant Fernstrom. Fernstrom answered, admitting the partnership, and alleging that the defendant Bamberger was also a partner and a necessary party. Bamberger was made a party. He appeared, averred he was a partner, and claimed a one-third interest in the business. The case was tried to the court.

In May, 1910, the plaintiff and Fernstrom entered into an oral agreement to acquire title to four or five parcels of land situate in North Salt Lake, Salt Lake County, to sell

the property and divide the proceeds equally between them. The property formerly belonger to William H. Folsom, plaintiff's father, who died ten or twelve years prior to the negotiations between the plaintiff and Fernstrom. He had three families, the plaintiff being a member of the first family. All of the deceased's property was by will devised to the second and third families. The property in question was considered of little value, and after the deceased's death was abandoned, and every year for ten years had been sold for general taxes and purchased by Salt Lake County. There were something like fifteen heirs or legatees, children of the deceased, residing in Utah, California, and elsewhere. The plaintiff and Fernstrom conceived the plan of acquiring the title by paying the back taxes, costs and interest, purchasing and redeeming the property from the county, obtaining quitclaim deeds from the heirs, then selling the property and dividing the proceeds. Fernstrom was to advance all necessary moneys for that purpose. Neither had any interest in the property. When asked what he was to do in the enterprise the plaintiff answered:

"My knowledge of the property, and so on, gave me an insight into it and I said to him (Fernstrom) if we went in together we would work together trying to clear it up and get the title."

It was agreed between them that the title, as it was obtained, should be taken in the name of Fernstrom for the reason, as testified to by the plaintiff, he was not on "good terms" with some of the heirs, and, were it known he was interested in the enterprise, the obtaining of deeds would be rendered more difficult. Fernstrom redeemed from the tax sales, advanced all moneys for that purpose, as well as all the moneys paid out in the enterprise. Several letters were written by the plaintiff to some of the heirs, informing them that Fernstrom had paid the taxes and had obtained a deed from the county, and that "in talking with him I advised that he give each of you twenty-five dollars for a quitclaim deed and save all trouble. This he has concluded to do, and a number have quitclaimed to him, and no doubt all will do so." He

further notified them that a purchaser at a tax sale had acquired title to another parcel belonging to the estate, and by court proceedings over plaintiff's protest had obtained a good title, and hence advised them to accept the offer and give the deed, "as that will be the only way for you to get anything out of it," and stated that "to probate the estate in the present condition will cost more than $1000, besides there would be outstanding debts of father's that would come and have to be met." These letters were submitted to Fernstrom and were approved by him. Title was acquired to some of the property and sold. In the latter part of May, 1910, Fernstrom negotiated a sale for one of the parcels to the Wasatch Construction Company for a consideration of $1500. He informed the company of the condition of the title, and that probably court proceedings would be necessary to clear it up, and that it would take some time to do that. The company replied that it would not wait, but would pay the full consideration, $1500 on condition that a bond in the sum of $3000 (it expecting to make immediate improvements) be given guaranteeing the title. Here is where the whole controversy arose resulting in this lawsuit.

According to the testimony of Fernstrom, after he had advised the plaintiff of the offer and the situation, he and the plaintiff endeavored to get a bond from companies in that business, but were unsuccessful. Fernstrom then applied to the defendant Bamberger for a bond, who said that he would furnish one, provided "he was taken in as a one-third partner in the transaction." Fernstrom saw the plaintiff, "and I told him the impossibility of getting any bonds, but that Bamberger had agreed to furnish a bond, provided we took him in as a one-third partner in the transaction. After explaining matters I said to him: 'Now what shall I tell them? Shall we do it, or shall we not do it?' Mr. Folsom said: 'I think it is rather too much to take him in as a one-third partner, but we have got to make the sale because it will cost us more money than we expected, and you had better go and make the deal.'" Then, according to the testimony of Fernstrom and Bamberger, the three met at Bamberger's office, where the bond was prepared, and was signed in plaintiff's

presence by Bamberger himself and his brother, Simon Bamberger, and where it was agreed by Folsom, Fernstrom and Bamberger that Bamberger was to have a one-third interest, in consideration of his furnishing the bond, and the money by the construction company paid to him, which was by him to be paid out as it was needed in the business. The bond accordingly was delivered to the construction company, who approved and accepted it, and on the 26th of May, 1910, paid the $1500 to Bamberger, who paid it out as it was needed in the business. About a month after that the plaintiff became dissatisfied, and claimed that Bamberger had too large an interest. Thereupon he and Fernstrom called on Bamberger, who stated that if Folsom would obtain another bond and have it substituted for the one he had given, he would relinquish all claim and make no charges. The plaintiff on the 24th of June, caused another bond to be prepared and signed by himself, his son, and Fernstrom, and took it to the attorneys for the construction company, and requested that it be substituted for the Bamberger bond. The attorneys stated that they were satisfied with the Bamberger bond, and did not care to "bother about substituting another for it," and referred him and Fernstrom to the manager of the construction company. Fernstrom and the plaintiff thereupon, by appointment, conferred with the manager, who declined the substitution. According to the testimony of the plaintiff, when Fernstrom saw him and told him that Bamberger was willing to furnish the bond provided he was given a one-third interest, the plaintiff declined to give any such interest, and stated that he did not want Bamberger to give the bond, and that they could furnish a bond themselves; that when he learned Bamberger had given the bond, he objected to his giving it, and especially objected to giving him a one-third interest in the business, and that he at no time consented to give him anything, or to take him in as a partner; that upon Fernstrom's assurance that Bamberger would release all claims, if a satisfactory bond was substituted for the Bamberger bond, he caused a bond to be prepared and signed by himself and his son and by Fernstrom, on the 24th of June;

that the attorneys for the construction company refused to accept it, and referred the plaintiff and Fernstrom to the manager; and that at an appointed time and place the plaintiff, though there was unable to see the manager, but later met Fernstrom, who told him he had seen the manager, and that the manager declined to accept the proposed substituted bond.

A full and complete accounting was rendered by Fernstrom. The court found he had in his hands $140, of which ninety-seven dollars should be distributed and paid to the plaintiff and the balance to Fernstrom; that Fernstrom had in his name one parcel of land of the value of $1500 or $2000 undisposed of, which had been acquired under the partnership agreement. That land was ordered sold, and the proceeds divided equally between the plaintiff and Fernstrom. Bamberger was found, and held not to be a partner, and consequently was given no interest in the partnership assets or business, and was awarded nothing.

The defendants appeal. They claim:

(1) That the arrangement between Fernstrom and the plaintiff constitutes a conspiracy to cheat and defraud the heirs of the Folsom estate, and was illegal, and hence the members of the partnership have no remedy against each other for distribution or apportionment in respect of partnership dealings and transactions had in pursuance thereof; (2) that the manifest weight of the evidence shows Bamberger, with the knowledge and consent of both the plaintiff and Fernstrom, and by an agreement between them, became a partner, and as such was entitled to participate in the distribution and apportionment of the partnership assets; (3) and though Bamberger did not become a partner, nevertheless Fernstrom, as a member of the partnership and the managing agent of the partnership business, had implied authority to give Bamberger an undivided one-third interest in the partnership business in consideration of Bamberger's furnishing the bond.

We think the first is wholly groundless. It is based entirely upon the conduct of the plaintiff subsequent to the con-

tract of partnership in writing letters to some of the heirs, in which he withheld information that he himself was interested in acquiring title to the properties, and advising them to accept twenty-five dollars for their respective interests, stating that was all that would be paid to any of them, when others were given $100 or more, for their interests of equal value, and that it probably would cost more than $1000 to probate the estate and acquire the title. These letters, before they were sent, were submitted to and were approved by Fernstrom. Neither the plaintiff nor Fernstrom had any interest in the property, and neither sustained any legal, confidential, or fiduciary relation to any of the heirs; nor is it made to appear that any of them were deceived by any false representation, or that they acted or relied upon it, or suffered any injury in consequence of it, or that any of them complained. But there is nothing to show that the partnership contract itself was entered into for any fraudulent, wrongful, or unlawful purpose whatever. All that can be said is that the plaintiff and Fernstrom saw an opportunity of purchasing property, which was regarded as having but little value, and which had been abandoned, the title clouded and uncertain, and of selling it, if they could, at a profit. They, no doubt, purchased it upon the best possible terms; but in their dealings in such respect they dealt with those claiming an interest, not in any fiduciary or confidential relation, but at arm's length; and, if in such dealings any unfair or undue advantage was had, it does not lie in the mouth of either of the defendants claiming to be members of the partnership to assert uncomplained of grievances of the heirs in defense of a demand for an accounting and apportionment of partnership proceeds derived from partnership dealings and transactions.

Now, as to the second claim. Of course Bamberger could not become a member of the partnership without the consent of both the plaintiff and Fernstrom, the original members of the firm. Whether he became a member or not the evidence is in conflict. As testified to by both Fernstrom and Bamberger he became a partner with the consent and

by agreement of both Fernstrom and the plaintiff. According to the testimony of the plaintiff he did not. The court found the facts in such respect as testified to by the plaintiff. While on the record we would have been better satisfied with a contrary finding, yet we cannot say the finding made by the court is so clearly against the weight of the evidence as to justify us in directing a different finding. While in an equity case on an appeal on questions of both law and fact we have the power to set aside and make or direct other findings, still, it is a power which has been, and ought to be, sparingly exercised on evidence which is in conflict. We, therefore, permit the finding to stand.

There is nothing in the last point, that Fernstrom had implied authority to give Bamberger a one-third interest in the partnership business and assets in consideration of his furnishing the bond. Fernstrom undoubtedly had implied authority, in furtherance of a transaction of the partnership business, in the usual and ordinary way, to contract for and to pay a reasonable compensation to obtain a bond, if that was necessary to effect and accomplish some partnership transaction or deal, but he had no implied authority to take Bamberger in as a partner, or to contract for, or give him, an undivided interest in the assets and business of the partnership.

But, on the record we are not satisfied with the disposition of the case. This action was for an accounting, a distribution of the assets, and a dissolution of the partnership. Upon an accounting had, the court determined the amount due each, the plaintiff and Fernstrom, ordered the assets distributed equally between them and the partnership dissolved. The plaintiff invokes equity, and he must do equity. The sale made to the construction company, according to all the evidence, was regarded as a good sale. It is beyond dispute that it could not have been made without the giving of a bond guaranteeing the title. The plaintiff and Fernstrom, though attempts had been made to do so, were unable to obtain a bond, until Fernstrom called upon Bamberger for that purpose. At least at Fernstrom's instance and request, Bamberger furnished the

bond. It certainly was not done gratuitously. The plaintiff, as well as Fernstrom, knew that the sale to the construction company could not be made and consummated, until a bond was given. He knew the sale was made and the full consideration paid by the construction company. On the record there is no doubt whatever that he knew Bamberger had given the bond, and that it is as clear as anything can be that, had Bamberger not furnished the bond, the sale would not have been made to the construction company. When the controversy arose as to Bamberger's interest the plaintiff endeavored to substitute a bond in place of the Bamberger bond. The bond furnished by him was rejected; at least the construction company would not consent to the substitution. It still holds, and has the right to hold, the Bamberger bond as a guaranty of title. Both the plaintiff and Fernstrom have had, and will continue to have, the benefit of it. Bamberger clearly is entitled to reasonable compensation for the furnishing of the bond and the obligations assumed by him. It is a just partnership debt, and ought to be paid out of the partnership assets before distribution and dissolution of the partnership.

The judgment of the court below is therefore modified, and the cause remanded, with directions to the trial court to hear evidence to ascertain and determine what would be reasonable compensation for the furnishing of the bond and assuming the obligations thereunder by Bamberger, requiring the taxable costs for such hearing and the costs of this appeal by all parties, less 108 pages for printing the abstract, to be paid out of the partnership assets; and then, out of such assets remaining require to be paid the reasonable compensation found to be due Bamberger; and then to distribute the assets so remaining between the plaintiff and Fernstrom, as heretofore ordered and directed by the court, upon satisfactory proof of a discharge of all partnership debts. The abstract on this appeal, consisting of 216 pages, much of it made up by printing in full the questions propounded to and answers made by the witnesses, and containing other redundant matter, is unnecessarily voluminous and could well have

been put in 108 pages. The appellants will therefore be required to themselves bear that unnecessary expense. Such is the order.

McCARTY, C. J., and FRICK, J., concur.