SPANISH FORK CITY et al. v. SPANISH FORK EAST
BENCH IRR. & MIN. CO. et al.

No. 2712. Decided July 19, 1915. (151 Pac. 46.)

INJUNCTION—CONTEMPT—DISOBEDIENCE OF DECREE. Comp. Laws
1907, section 1288x25, as amended by Laws 1911, c. 43, provides
that any appropriated water may be turned into the channel of
any natural stream, and be taken out again either above or
below the point where it was turned into the stream, if the orig-
inal water is not diminished. Defendant, in contempt proceed-
ings for disobedience of the court's decree, had turned water de-
rived through the United States Reclamation service into a
river, and, in good faith and under a claim of right, had appro-
priated water of no greater amount from a point above where
it had been turned in. Held that, even if one might not turn
water into a stream and divert it from another point without
applying to the court having jurisdiction and obtaining permis-
sion to transfer the water therein and having the court fix the
point of diversion and provide a proper measuring device, as the
water diverted by defendant was his own and did not belong
to the original appropriators and could not have been adjudi-
cated by the prior decree, defendant was not guilty of contempt.

Appeal from District Court, Fourth District; Hon. *A. B.*
*Morgan,* Judge.

Action by Spanish Fork City and others against Spanish
Fork East Bench Irrigation & Mining Company and others, in
which D. A. Mitchell was proceeded against upon affidavit
charging contempt in disregarding a decree of the court.

Judgment finding Mitchell guilty of contempt. He ap-
peals.

REVERSED AND REMANDED, with directions.

*J. W. N. Whitecotton* for appellants.

*Elias Hanson* for respondents.

FRICK, J.

This is a contempt proceeding commenced against D. A.
Mitchell. In the affidavit initiating the proceeding it is, in

substance, alleged that in April, 1899, a certain decree was duly entered in the district court of Utah County, wherein the rights of the waters of Spanish Fork River in said county were duly adjudicated and apportioned among the several claimants thereof, all of whom were parties to said decree; that on or about the 12th day of August, 1913, said Mitchell, "in willful disregard of said decree and injunction, and in contempt of the same, and wrongfully, and in disregard of the rights of the plaintiffs and defendants, * * * diverted and used for the purpose of irrigation a large quantity of the waters of said Spanish Fork River to which the plaintiffs and the defendants were entitled," and to which said Mitchell was not entitled, all of which acts, it is alleged, were contrary to said decree and in contempt thereof. A citation was duly issued by said court, and said Mitchell appeared and filed an answer to said affidavit, in which he admitted the decree aforesaid, and practically denied all of the other allegations contained in the affidavit. For a further answer and defense he, in effect, averred that at the time when it is alleged in said affidavit that he had diverted water from said Spanish Fork River he was the lawful owner of a certain quantity of water flowing in said stream, and that he had diverted and used the water so owned by him, and no other, and no more. At the hearing the attorneys for the respective parties in open court stipulated as follows:

"Mr. Whitecotton: D. A. Mitchell, if your honor please, is the one served and making this stipulation. We agree and stipulate that the matters set out in the affidavit filed for this order, as relates to the entering of the decree in 1899, and the terms therein specified, are as alleged in the affidavit; and we admit that at about the time stated we diverted from the headwaters of Spanish Fork River, or one of the tributaries of Spanish Fork River, water which we used for irrigation. We deny any contempt of the decree of this court, or any intention to disregard the court's decree, and in justification of our acts say that prior to this controversy now before the court, these defendants herein cited to appear purchased from the United States Reclamation service seven second feet,

more or less, and that we caused that water to be turned into the supply of Spanish Fork City, or of the plaintiffs into Spanish Fork River, and that the water which we are using above, which we admit we are using as charged, we are using as an offset, as we claim, for what we have turned into that river, but it is too low down for us to get it high enough up for our use. And that is the justification that we offer of our conduct, and we deny that we are in any contempt of the court.

"It is further agreed by the parties that the quantity of water taken out by us is not in excess of that which we furnish to the plaintiffs in this case in the river. It is also stipulated that this river is a natural channel, a natural waterway, and that for every drop of water we have taken out higher up, we supply an equal amount, in respect to both quantity and quality below. Upon that state of facts the respondent rests his defense and asks to be hence dismissed with costs.

"Mr. Hanson: Now, if the court please, there are one or two other stipulations that we would like to add to what Brother Whitecotton stated. The questions are these: That the waters which are leased by the United States government were leased to one Lant and Reese, of Payson, who attempted to divert that water through the Salem canal, they sold it to certain defendants, including this defendant, D. A. Mitchell.

"Mr. Whitecotton: We will accept that."

It was also agreed that the water in question was diverted without the consent of the other parties to said decree, and without having been measured by the county surveyor. It was agreed, however, that the water taken by Mr. Mitchell was measured by the water commissioner of Spanish Fork River and by Mr. Mitchell.

Upon substantially the foregoing facts the court made findings of fact and conclusions of law, in which it was found that the defendant D. A. Mitchell was guilty of contempt, and judgment was entered accordingly, from which he appeals.

Plaintiffs' claim and the court's action are apparently based upon the decree of 1899, while Mr. Mitchell's defense is based on Comp. Laws Utah 1907, section 1288x25, as amended by chapter 43, Laws Utah 1911, p. 60, which reads as follows:

"Any appropriated water may be turned into the channel of any natural stream, or into a reservoir constructed across the bed of any natural stream, and commingled with its waters and then be taken out, either above or below the point where emptied into the channel, but, in so doing, the original water in such stream or reservoir·must not be diminished in quantity or deteriorated in quality."

It will thus be seen that under the stipulated facts the defendant Mitchell clearly had the right to assume that he was keeping within at least the letter of the law of this state relating to the turning of water into a stream which is intended to be diverted therefrom by the owner or claimant thereof at some other point on the stream. Plaintiff's counsel, however, insists, and the trial court was apparently of the same opinion, that under the statute quoted one may not turn water into a stream the water of which has been appropriated, adjudicated, and apportioned, and at some other point on the stream divert the water so turned in, without first applying to the court having jurisdiction of the water in the stream and obtaining its permission to interfere with the water in said stream, and have the court fix the point of diversion and also provide for a suitable and proper measuring device so as to protect the rights of all the water users on the stream. Let it be conceded that the foregoing would be a proper, prudent, and safe method of procedure, yet there is nothing in the law, which authorizes the commingling of water, requiring it. Moreover, if the person who turned water into a stream, which he diverted at some other point thereon, in so doing interfered with the substantial rights of any one having an interest in the water flowing in the stream, the courts would have ample power to prevent or to arrest any wrong that might arise in that regard. Again, if it were assumed that the defendant Mitchell should have done something more than he did in turning in and in diverting the water in question, yet his failure in that regard would not necessarily constitute a contempt of court. The water claimed and used by Mr. Mitchell, it is agreed by all, was turned into, that is, added to, the volume of water flowing in the stream, and the water turned in by him was of the character and quality flowing therein. The water he di-

verted was therefore his own, and did not belong to the original appropriators, and was not, and could not have been, adjudicated and apportioned by the decree of 1899. How, then, could Mr. Mitchell have been guilty of a contempt of court for interfering with water which was adjudicated by that decree? A person is not guilty of a contempt of court every time he does something which interferes with adjudicated rights, so long as he, in good faith, claims something which was not a part of the subject of litigation upon which the decree in question is based, even though what he claims in some way touches or effects the subject litigated. That, at the very most, is all that Mr. Mitchell did under the undisputed facts of this proceeding. All that we do or can determine, therefore, in this proceeding is that under the agreed facts the defendant Mitchell was not guilty of contempt, and hence the court erred in its conclusion of law and judgment.

The judgment is reversed, and the cause is remanded to the district court of Utah County, with directions to set aside its findings of fact and conclusions of law, and to vacate the judgment based thereon and to dismiss the proceeding at plaintiffs' costs. Appellant to recover costs on this appeal.

STRAUP, C. J., and McCARTY, J., concur.