Appeal from First District.

## RICHMOND IRR. CO. et al. v. SHAW et al.

No. 3187.   Decided April 21, 1919.   (181 Pac. 162.)

1. APPEAL AND ERROR—REVIEW—FINDINGS ON CONFLICTING TESTIMONY.   The Supreme Court is not justified in interfering with findings made upon conflicting testimony, unless clearly against the weight of the evidence.[1]   (Page 384.)

2. WATERS AND WATER COURSES—APPROPRIATION—RIGHT ACQUIRED. An irrigation company and a city had no right to interfere with the use of water by a property owner, and no right without the owner's consent to divert waters from a spring appropriated by the owner's predecessor, even though they had supplied the owner with other water from this spring or from some other source.   (Page 385.)

3. WATERS AND WATER COURSES—WATER LITIGATION—COSTS.   Where a landowner had a right to a certain amount of waters of a spring in litigation and was not wrong in his objections to the actions of plaintiff's in the suit into which he was brought by other parties, all the costs of plaintiffs should not be taxed against him, though the decree is partly adverse to him.   (Page 385.)

Appeal from District Court, First District, Cache County; *J. D. Call,* Judge.

Suit by the Richmond Irrigation Company and Richmond City against Mathew H. Shaw and Christian Steffenson. From decree for plaintiffs, said Steffenson appeals.

AFFIRMED as modified.

*K. K. Steffensen* and *Stewart, Stewart & Alexander,* all of Salt Lake City, for appellant.

*Nebecker, Thatcher & Bowen* and *A. A. Law,* all of Logan for plaintiffs respondents.

[1] *Plant* v. *Ritter,* 47 Utah, 506, 155 Pac. 426; *Woolf* v. *Gray,* 48 Utah, 239, 158 Pac. 788; *Folsom* v. *Fernstrom,* 43 Utah, 432, 134 Pac. 1021; *Mayer* v. *Flynn,* 46 Utah, 598, 150 Pac. 962.

*Walter & Harris* of Logan, for respondent Shaw.

WEBER, J.

The ownership of what is hereinafter called the North spring, Spring No. 3, or the Lars Johnson spring, is the only question involved on the appeal of the defendant Christian Steffensen from a decree in favor of plaintiffs.

In 1860 a small community of people settled on the present site of Richmond, Cache county, and erected a fort in which they lived. The settlers engaged in farming, and at once commenced building ditches to supply themselves with water for culinary, stock-watering, and irrigation purposes. They first diverted the waters of Birch creek, a tributary of Cherry creek which flows down Cherry creek canyon westward into Cache valley. In this same canyon, towards its southerly side, is what is referred to in the record as "spring area," sometimes as Birch creek springs, and sometimes as Lars Johnson springs. Birch creek springs constitute the headwaters of Birch creek, which flows from this source down into the valley until it empties into Cherry creek. The spring area constitutes a swampy parcel of ground estimated at six or seven rods across each way, and from that water issues in a flowing stream in three well-defined places referred to as Big spring, or Spring No. 1, Middle spring, or Spring No. 2, North spring, or Spring No. 3, the latter spring being also referred to in the record as the Lars Johnson spring. In addition there is some seepage from this whole area which finds its way into Birch creek channel.

More than 10,000 acres of land have been reclaimed and cultivated by the founders of Richmond city, this land being owned in severalty.

Among others the district court found the following facts: That at the time of the settlement, the founders of Richmond, the predecessors in interest of the plaintiffs, diverted all the waters of Birch creek and applied the same to the irrigation of their lands, and other purposes; that thereafter they diverted all the waters of Cherry creek and its tributaries, and

applied said waters to beneficial uses, and have continued to
so apply said waters; that the diversion, and applications of
water were made and conducted as a community enterprise
by voluntary association, and the distributions of water to
the various appropriators have been made continuously from
the time of the diversion by a recognized official called a water
master who distributed the waters during the irrigation sea-
sons to those entitled thereto; that thereafter the appropria-
tors effected a de facto organization known as the Richmond
irrigation district, which assumed and exercised further con-
trol over the diverting works and issued certificates to the di-
verters, designating the shares of water right owned by each,
and this organization continued to distribute all the waters
of Cherry creek and its tributaries, except such as were dis-
tributed and controlled by Richmond city, for a period of
more than twenty years and until 1909, when the organization
was dissolved, and all the holders of the so-called shares of
the organization, who were the owners of right to the bene-
ficial use of the waters that had been diverted, conveyed all
their right to the diverting works and distribution system
and to the uses of said waters to plaintiff Richmond Irriga-
tion Company, a corporation, which issued to the owners and
users of the water certificates of stock, one share for each
share held by such persons in the Richmond irrigation dis-
trict; that said corporation and Richmond city have con-
tinuously diverted all the waters of Birch creek and of the
Birch creek springs, and distributed the same to the stock-
holders of the Richmond Irrigation Company and to the in-
habitants of Richmond city for irrigation, domestic, culinary,
stock-watering, and municipal purposes.

The court further found that Birch creek issues from the
spring area, commonly called Birch creek springs or the Lars
Johnson springs, and this spring area is fed and supplied by
an underground current, which has its source eastward about
a mile in Cherry creek and flows in a well-defined under-
ground channel from its source to said spring area, from
which the waters issue in a running stream in three well-
defined places referred to in the findings as Springs, Nos. 1, 2,

and 3; that Spring No. 3 lies in and issues from the bed of the natural channel through which the waters-issuing from Spring No. 1 flowed continuously until the diversions and alterations by plaintiffs and their grantors and predecessors in interest; that in 1873 the predecessors in interest of plaintiffs diverted all the waters of Cherry creek, and commingled same with the waters issuing from said spring area, and thence forward until 1883 conducted all of said waters so diverted from Cherry creek, together with all of the waters issuing from said spring and spring area, through the natural channel of Birch creek, and applied them to the same uses to which they theretofore had devoted them; that in 1883 they constructed what was known as the "Upper Ditch" and from such time until the present plaintiffs have diverted and used all of said waters, including the water from Spring No. 3.

The court also found that defendants and their predecessors in interest never used any of the waters of Lars Johnson springs except as the same constituted a part of the waters of Cherry creek, or otherwise than in their turns as prorated to them by the water masters under the authority of the voluntary association which preceded the Richmond Irrigation District and under the authority of said Richmond Irrigation District during the period of its existence, and that they never used any of said waters since the dissolution of the Richmond Irrigation District save as stockholders of the Richmond Irrigation Company, except that the defendants and their predecessors in interest have used, by taking from the stream supplied by Cherry creek and its tributaries where the same flowed past the dwelling houses of defendants, sufficient of the waters thereof for their domestic and culinary needs, and have used water so flowing for watering their stock, but that there is no evidence from which the court can find the amount or quantity of water so used by the defendants and their predecessors in interest; that in 1916 the defendant Steffensen wrongfully diverted the waters of said springs, and prevented them from flowing into the diverting works of plaintiffs; that in the month of December, 1916, Richmond city diverted the waters of Spring No. 3 into its

water pipes, which were interfered with by Christian Steffensen, who prevented plaintiff city from taking the waters from said spring into its pipe line and diverting the same, and thus deprived Richmond city of part of the water to which it was entitled; that the use of all of the waters of said Lars Johnson springs is necessary for the proper tilling of the lands of the stockholders of the plaintiff irrigation company, and for the supplying of the needs of the stockholders, and also of the inhabitants of Richmond city, for domestic, stock-watering, culinary, and municipal purposes during the whole of each year.

In our opinion the findings of fact made by the court are supported by substantial evidence though there are many sharp conflicts in the testimony. The plaintiff produced the water masters who had distributed water from 1888 until 1916, with the possible exception of one or two years. All of them testified that the defendants' grantors had never used any water from the Lars Johnson spring, or Spring No. 3, or any of the Birch creek springs, except as shareowners of the voluntary organization and thereafter as stockholders of the Richmond Irrigation Company. Lars Johnson, who acquired a squatter's right in 1888, and who lived on the land on which these springs are situated until 1906, when he sold the land, to which he had secured a patent in 1901, testified that he never used any of the water from the Birch creek springs, or from either of them, nor from Spring No. 3, except as he was given permission by the water master. It also appears from his testimony, as well as from that of all other witnesses, that there was a ditch from Spring No. 3, or Lars Johnson spring, that passed near Johnson's house, and that this water was used by Johnson all the time for domestic, culinary, and stock-watering purposes. Johnson sold to William R. Tripp in 1906. Tripp, who occupied the land until 1913, when he sold to the defendant Shaw, claims to have used all the water from Lars Johnson spring without interruption and without asking permission of the water masters during all the time of his ownership. Mathew H. Shaw, the successor in interest to Tripp, also claims to have used all of the water in question until he sold to defendant Steffensen in 1916.

The evidence is conflicting as to the use of the water of the Lars Johnson springs by plaintiffs from 1907 until 1915, but, as the trial court was in a much better position to determine from the testimony the ultimate facts than we are, we are not justified in interfering with findings made upon conflicting testimony, unless they are clearly against the weight of evidence. *Plant* v. *Ritter,* 47 Utah, 506. 155 Pac. 426; *Woolf* v. *Gray,* 48 Utah, 239, 158 Pac. 788; *Folsom* v. *Fernstrom,* 43 Utah, 432, 134 Pac. 1021; *Mayer* v. *Flynn,* 46 Utah, 598, 150 Pac. 962.

It is undisputed that from the time that Lars Johnson occupied the Steffensen land in 1888 until plaintiffs attempted to interfere with it there was a stream from the Lars Johnson spring, or Spring No. 3, that had been used by Johnson and his successors in interest for domestic, culinary, and stock-watering purposes. The district court found that the defendant Christian Steffensen is entitled to have sufficient of the waters of Cherry creek and its tributaries flowing in the natural channel thereof past his dwelling house to supply his needs for domestic and culinary uses and for the watering of his stock. The decree is in accordance with the conclusions of law on this subject. In our opinion the conclusion of law should have been that Steffensen should have sufficient of the waters of the Lars Johnson spring, and not generally of Cherry creek and its tributaries, for his use for the purposes mentioned, and such right should have been awarded him by the decree. Steffensen is entitled to the use of the water from that particular spring, and to the use of sufficient water for all of his domestic and culinary purposes and for watering stock, and is entitled to have the waters of that spring conducted to his dwelling and to other points at which he had used the water. Plaintiffs had no right to interfere with that use, and had no right, without Steffensen's consent, to divert the waters from Spring No. 3, even though they had supplied Steffensen with other water from a different spring or from some other source. The conclusions of law and the decree should be modified so as to provide that Steffensen have the use of water from the Lars Johnson spring, or Spring No. 3,

sufficient for his domestic, culinary, and stock-watering purposes, and that plaintiffs shall be entitled to the use of the waters of the Lars Johnson spring subject to the rights of Steffensen as hereinbefore stated. As there was no evidence before the court from which the amount of water used by Steffensen for those purposes could be determined, the decree is necessarily indefinite and uncertain. In order that this litigation be ended and the rights of the parties be determined as far as the Lars Johnson spring, or Spring No. 3, is concerned, the district court is hereby directed to reopen the case for the purpose of permitting said Steffensen, if he so desires, to introduce testimony showing the amount of water heretofore used by him and his predecessors in interest from said Lars Johnson spring, or Spring No. 3, for the purposes before stated.

Appellant complains that in the decree the Steffensen property, and upon which these springs are situated, is misdescribed. That is merely a clerical error, and the court is hereby directed to make the correction in the decree in accordance with the facts.

The taxation of all costs against Steffensen is one of the assignments of error. As Steffensen concededly has the right to the use of a certain amount of the waters from the Lars Johnson spring, and as he was not wrong in his objections to the actions of the plaintiff Richmond city in laying the pipe line, and as he was brought into court by the other parties, we are wholly unable to perceive why, in justice and equity, all the costs of plaintiffs should be taxed against him. The district court is therefore ordered to further modify the decree herein by eliminating the costs taxed against the defendant Steffensen, and it is hereby ordered that respondents pay one-half and appellant one-half of the costs on appeal, and each pay his own costs in the district court.

Save as herein modified, the judgment is affirmed.

CORFMAN, C. J., and FRICK, GIDEON, and THURMAN, JJ., concur.