UNITED STATES et al. v. CALDWELL, State Engineer
(UPPER BLUE BENCH IRR. DIST., Intervener).

No. 4112. Decided October 17, 1924. Rehearing Denied December
15, 1924. (231 Pac. 434.)

1. WATERS AND WATER COURSES—SUBSEQUENT APPROPRIATOR MAY
   DIVERT WATER IF HE RETURNS SAME QUANTITY TO PRIOR APPRO-
   PRIATOR'S DITCH. Under Comp. Laws 1917, § 3467, and section
   3470, as amended by Laws 1919, c. 67, § 9, water may be di-
   verted from stream by subsequent appropriator if water from
   same stream or another stream of equal quantity and quality
   is returned into stream or into ditch or canal of prior appro-
   priator, if prior appropriator is not injured thereby.[1]

2. WATERS AND WATER COURSES—PURPOSE OF STATUTES RELATING TO
   APPROPRIATION OF WATER STATED. Purpose of statutes relating
   to appriation of water is that water shall be applied and used
   to produce greatest benefit to inhabitants of state, and every
   appropriator must yield to that purpose if in so yielding his
   rights may be preserved without material injury to him.

3. WATERS AND WATER COURSES—PRIOR APPROPRIATOR DOES NOT
   ACQUIRE TITLE TO WATER, BUT MERELY RIGHT TO USE. Prior
   appropriator of water does not acquire title thereto, but merely
   obtains right to use specific quantity of water from certain
   stream for beneficial purpose.

4. WATERS AND WATER COURSES—PRIOR APPROPRIATOR'S RIGHT TO
   CHANGE PLACE OF DIVERSION NOT VESTED RIGHT. Prior appro-
   priator's right to change place of diversion is not vested. right,
   and no such change can be made if thereby public or any other

---

[1] *Spanish Fork City* v. *Spanish Fork, etc. Co.*, 46 Utah, 487, 151
P. 46; *Nash* v. *Clark*, 27 Utah, 158, 75 P. 371, 1 L. R. A. (N. S.) 208,
101 Am. St. Rep. 953, 1 Ann. Cas. 300; *Tanner* v. *Provo Bench, etc.,
Co.*, 40 Utah, 105, 121 P. 584; *Salt Lake City* v. *Salt Lake Water &
Electrical Power Co.*, 24 Utah, 249, 67 P. 672, 61 L. R. A. 648; *Salt
Lake City* v. *Gardner*, 39 Utah, 30, 114 P. 147; *Big Cottonwood Tan-
ner Ditch Co.* v. *Shurtliff*, 56 Utah, 196, 189 P. 589; *Moyle* v. *Salt
Lake City*, 50 Utah, 357, 167 P. 660; *Spring Creek Irr. Co.* v. *Zol-
linger*, 58 Utah, 90, 197 P. 737; *Richmond Irr. Co.* v. *Shaw*, 54 Utah,
379, 181, P. 162, distinguished.

See (1) 40 Cyc. p. 714 (2) 40 Cyc. p. 714 (1926 Anno.) (3, 6) 40
Cyc. p. 713 (4) Cyc. p. 720 (5) 40 Cyc. p. 722 (1926 Anno.).

appropriator, prior or subsequent, is adversely affected, nor can prior appropriator prevent subsequent one from using unappropriated waters merely because he may in future desire to change place of diversion.

5.  WATERS AND WATER COURSES—APPORTIONMENT OF WATERS UNDER CONTROL OF DISINTERESTED PERSON. Measurement and apportionment of water must be under control of some disinterested person, usually appointed by court, or it may be under direction of state engineer under court's supervision, and courts usually reserve continuing jurisdiction in such cases.

6.  WATERS AND WATER COURSES—NOTICE AND HEARING BEFORE STATE ENGINEER NECESSARY TO OBTAIN RIGHT TO USE WATER. Notice and hearing before state engineer are necessary to obtain right to use water from any public stream, and any rights granted are always subject to prior rights.
KIMBALL, District Judge, dissenting.

Appeal from District Court, Fourth District, Duchesne County; *Elias Hansen*, Judge.

Action by the United States of America and another against R. E. Caldwell, as State Engineer, and another. Judgment for defendants, and plaintiffs appeal.

AFFIRMED.

*Ethelbert Ward*, of Denver, Colo., and *Charles M. Morris* and *Edw. M. Morrissey*, both of Salt Lake City, for appellants.

*M. B. Pope*, of Provo, *D. O. Willey*, of Salt Lake City, and *L. A. Hollenbeck*, of Duchesne, for respondents.

FRICK, J.

The plaintiffs hereinafter called appellants, as trustees for the Indians named in the title, commenced this action in the district court of Duchesne county against the state engineer of Utah to set aside a certain order made by the engineer.

The action is brought pursuant to our statute which permits any person who is affected by any order of the state engineer affecting water rights to test the legality of such order by bringing an action which is in the nature of a review of the orders made by the state engineer. The Upper Blue Bench irrigation district, as the real party in interest, hereinafter styled intervener, was permitted to intervene in the action.

Issues were duly joined between the parties, and a hearing was had in said district court in which all of the material facts were stipulated by the respective parties upon which the district court made its findings of fact and conclusions of law in favor of the intervener and entered judgment accordingly, from which this appeal is prosecuted.

In order to assist the reader to a clear understanding of the real questions involved, we here insert a copy (reduced in size) of the official plat or map that was by agreement of the parties introduced in evidence and made part of the proceedings in the district court, all of which are certified to this court in the form of an original bill of exceptions.

In view that the foregoing map, when supplemented by the statement of facts which follows, will give the reader a full understanding of the questions presented for decision, we refrain from incumbering this opinion with the lengthy statement of facts and conclusions of law aforesaid. It must suffice, therefore, to state that from the undisputed facts and findings of the court it appears that the appellants, for the use and benefit of said Indians, are prior appropriators of 125.03 second feet of the waters of Lake Fork

river shown on the plat, which water is diverted from said river by what is called the Red Cap canal at the point marked "1" on the plat. The lands irrigated by that canal are indicated on the plat by the letters "A" and "B," amounting to 8,751.74 acres. The intervener desires to obtain water to irrigate what are designated on the plat "Upper Blue Bench Lands," amounting to approximately 18,000 acres. With that end in view, the intervener, pursuant to our statute, applied for and obtained the right to take from the stream designated "Rock creek" on the plat 250 second feet of water. In order to irrigate the said Blue Bench lands, the intervener proposed to divert the water from said Rock creek at the point indicated by the figure "2" on the plat, and it intended to convey the water to said lands through the proposed canal indicated by the broken line on the plat commencing at the point marked "2." It was found, however, that by reason of the formation of the rocks and the very porous nature of the soil along the line of said proposed canal it was impractical to construct the same, except at a cost which would practically defeat the project. The intervener, therefore, pursuant to our statute, made application to the state engineer to be permitted to divert from the stream indicated "West Fork" at the point marked "3" on the plat, a tributary of Lake Fork river, sufficient water to irrigate the Blue Bench lands upon the condition that the intervener should deliver to appellants an amount of water equal in quantity and quality to irrigate the lands marked "B" and "C" on the plat. (We omit to state the quantity of water in second feet, as that is not material to the questions involved.) To accomplish that object the intervener proposed to divert the water from the Duchesne river at the point marked "6" on the plat and to discharge a sufficient quantity to irrigate the lands marked "B" into the Red Cap canal at the point marked "4," and to discharge the remainder into the Lake Fork river at the point marked "5" on the plat. In view, however, of the topography of the county, the intervener cannot supply water to irrigate the lands marked "A" on the plat from the

Duchesne river; hence it proposed to permit sufficient water to accomplish that purpose to pass its diverting point marked "3" on the plat on the West Fork of Lake Fork river and permit the same to flow down the Lake Fork river to the Red Cap canal to irrigate the lands marked "A." By diverting the water from the several streams at the points and in the proportions indicated, the intervener can obtain sufficient water to irrigate the Blue Bench lands at a greatly reduced cost, while the appellants will obtain precisely the same quantity and quality of water that they now receive to irrigate their lands marked "A," "B," and "C." It will be observed, however, that in diverting the water to irrigate appellants' lands as proposed by the intervener, and as authorized by the district court, the water cannot all be discharged into Lake Fork river at a point which is above appellants' point of diversion, namely, the point marked "1," where the Red Cap canal taps Lake Fork river, but some of the water used by appellants must be discharged into Red Cap canal at the point marked "4" to irrigate the lands marked "B," while the remainder of the water, or sufficient to irrigate the lands marked "C," is discharged into Lake Fork river at the point marked "5." The court found, and the finding is not and, under the stipulated facts, cannot be assailed, that in diverting and distributing the water as proposed by the intervener the appellants would in no way suffer injury or damage. Indeed, in view of the local conditions, which are pointed out by the state engineer in his report, which is made a part of the record, the appellants are not only not injured or damaged, but they may ultimately be benefited by the exchange of water as proposed. Upon the other hand, the engineer's report also shows, and the court found, that the exchange of water as proposed will make it possible and practicable to irrigate a large tract of land, which, in view of the local conditions, cannot be done if the exchange of water be not made.

The appellants, however, pursuant to our statute, protested the intervener's application, and, failing in their

protest before the state engineer, they instituted this proceeding in the district court to have said engineer's order vacated and set aside. As indicated, the district court approved the state engineer's order and entered a decree permitting the intervener named therein to make the proposed exchange of water as hereinbefore stated. Hence this appeal. Appellants' contention in this court, in substance, is that both the state engineer and the district court exceeded their jurisdiction and power in authorizing the intervener to make the exchange of water as proposed and as fully set forth in the decree.

Referring now to our statute, Comp. Laws Utah 1917, § 3470, as amended by chapter 67, § 9, Laws Utah 1919, provides:

"Upon application in writing and, approval of the state engineer, any appropriated water may be turned into the channel of any natural stream or natural body of water or into a reservoir constructed across the bed of any natural stream, and commingled with its waters, and then be taken out, either above or below the point where emptied into the stream, body of water or reservoir, but, in so doing, the original water in such stream, body of water or reservoir must not be deteriorated in quality or dininished in quan-. tity, and the additional water turned shall bear its share of loss by evaporation and seepage and of the maintenance of said reservoir, and an equitable, proportion of the cost of the reservoir site and of the construction."

Prior to the amendment of 1919 the law permitted "any appropriated water" to be turned into any natural stream, etc., without making application to the state engineer, and without obtaining his permission so to do. See *Spanish Fork City* v. *Spanish Fork, etc., Co.*, 46 Utah, 487, 151 P. 46, where this court, before the amendment of 1919, held that any appropriator had the right under the statute to turn appropriated water into a natural stream and commingle it with the waters therein, and to take the same out of the stream at a point lower down or take an amount equal to the amount put in, less seepage and evaporation, from a tributary of the stream at a point higher up the stream, if to do so enlarged the use of the water and the same could be done without injury to a prior appropriator. In view,

however, that the right just stated might be abused, and that complications might arise, the Legislature wisely amended the statute, and thus provided that before water can be turned into a stream and again taken therefrom application must be made to the state engineer for permission, and that such permission should be obtained only after due notice and a hearing before the state engineer. The statute has been in force in this state since 1897, Laws Utah 1897, p. 220. The statute was in force, therefore, when appellants made application for the appropriation and use of water from Lake Fork river and obtained the right to use the water subject to the provisions of the statute the same as all other appropriators.

In addition to the foregoing, Comp. Laws Utah 1917, § 3467 (which was first adopted in 1892, Laws Utah 1892, p. 93), also provides that appropriated water may be conveyed by one water user through the existing ditches or canals of another water user, and that said ditches and canals may be enlarged under the law of eminent domain. That section has likewise been before this court and has been upheld. *Nash* v. *Clark,* 27 Utah, 158, 75 P. 371, 1 L. R. A. (N. S.) 208, 101 Am. St. Rep. 953, 1 Ann. Cas. 300; *Tanner* v. *Provo Bench, etc.,* 40 Utah, 105, 121 P. 584. Both of the foregoing cases were affirmed by the United States Supreme Court; the first in 198 U. S. 361, 25 S. Ct. 676, 49 L. Ed. 1085, 4 Ann. Cas. 1171, and the second in 239 U. S. 323, 36 S. Ct. 101, 60 L. Ed. 307.

Moreover, the right of a subsequent appropriator to divert water from a stream at a point above a prior appropriator's point of diversion and to use and to return the same into the ditch or canal of the prior appropriator, if undiminished in quantity and unaffected in quality, has become the settled law of this jurisdiction. See *Salt Lake City* v. *Salt Lake Water & Electrical Power Co.,* 24 Utah, 249, 67 P. 672, 61 L. R. A. 648. That case has frequently been cited by both courts and text-writers in support of the proposition that water may be diverted by a subsequent appropriator from a stream, and that water from

the same stream or from another stream, if equal in quantity and quality, may be returned into the stream or into the ditch or canal of the prior appropriator, if that is done at a point where the prior appropriator can make full use of the water, and without injury or damage to him. Mr. Kinney, in volume 2 of his excellent work on Irrigation, etc., at page 1399, in discussing the question now under consideration, says:

"The gist of the question is, Are the rights of the prior appropriator injured to any material extent? If not, then other seeming irregularities are allowed by the law. For instance, the water need not be delivered to him in the channel of the natural stream, but may be delivered in his ditch or canal above the place of his use, and the prior appropriator cannot complain if his rights are not injured and he receives his full quantity of water at that point."

In 1 Wiel, Water Rights, etc. (3d Ed.) § 279, after discussing the exclusive right of the prior appropriator to the amount of water appropriated and used by him, the author says:

"The exclusive right of the prior appropriator to have the natural flow to the extent of his appropriation does not, however, enable him to insist upon receiving it in the natural channel; the upper appropriator may instead give it to him by returning it into his ditch above his place of use—not necessarily into the stream above the head of his ditch—if he gets the quantity to which he is entitled, thereby substantially permitting the substitution of an artificial flow if it can be done without damage. * * *"

In support of the text the author cites a number of authorities.

In *Wiggins* v. *Muscupiabe L. & W. Co.*, 113 Cal. 182, 45 P. 160, 32 L. R. A. 667, 54 Am. St. Rep. 337, it is said:

"The plaintiff could under no circumstances be entitled to the use of more water than would reach his land by the natural flow of the stream, and, if he receives this flow upon his land, it is immaterial to him whether it is received by means of the natural course of the stream or by artificial means."

In *Ironstone Ditch Co.* v. *Ashenfelter*, 57 Colo. 31, 140, P. 177, the proposition is stated in somewhat different language, thus:

"A right to the use of water of a natural stream in no way depends upon the place of its application, and is not confined to the

land upon which the right came into existence, but the point of diversion, the place of application, and the character of the use may each and all be changed; the only limitation being the prohibition of any injurious effect upon the vested rights of others to the use of the water."

Indeed, the right to change the means or method of diversion of the prior appropriator, if it becomes necessary in order to make a larger use of the public waters by a subsequent appropriator if it can be done without injury to the prior appropriator, is no longer an open question anywhere, and certainly not in this jurisdiction. See *Salt Lake City* v. *Gardner*, 39 Utah, 30, 114 P. 147, which case is followed in *Big Cottonwood Tanner Ditch Co.* v. *Shurtliff*, 56 Utah, 196, 189 P. 589. See also, *Basinger* v. *Taylor*, 36 Idaho, 591, 211 P. 1085; *Bessemer Irr. Ditch Co.* v. *Oxford Farmers' Ditch Co.*, 65 Colo. 1, 170 P. 178; *Moyle* v. *Salt Lake City*, 50 Utah, 357, 167 P. 660; *Spring Creek Irr. Co.* v. *Zollinger*, 58 Utah, 90, 197 P. 737.

We do not contend that the precise question involved in this case is decided in the last cited cases, but what is contended is that the right to interfere with a prior appropriator's means or method of diverting and applying the water from a stream is clearly indicated in the foregoing cases, provided such can be done without injury to the rights of the prior appropriator.

Moreover, we insist that the purpose of the statutes of this state relating to water appropriation and its use is clearly to the effect that a prior appropriator of water may not prevent a subsequent appropriator from interfering with the prior appropriator's means and method of diverting and applying water if such interference is necessary in order to make a larger and more beneficial use of the waters of this state and if it can be done without material injury to the rights of the prior appropriator, and that this court has always construed the statute so as to protect and maintain the rights of the original appropriator intact, and, if that can be done without injury to him, to permit a subsequent appropriator to apply the waters of this state so as to bring about the largest possible beneficial use

under the circumstances. It is equally clear that upon principle such a course is not one of which the prior appropriator can complain, since the doctrine that a prior appropriator of water does not acquire title thereto but merely obtains the right to the use of a specific quantity of water from a certain stream upon condition that the    3 water shall be used for a beneficial purpose as that term is understood and applied in this arid region has so often been passed on and upheld by this and other courts that it has become elementary, and the citation of authorities would be a mere work of supererogation. In view of the foregoing, no property rights of the prior appropriators are, or can be, invaded by a mere exchange of water; provided, always, that he suffers no material injury by reason of the exchange.

It is true that in diverting the water from the Duchesne river at the point marked "6" on the plat the intervener cannot mingle that portion of the water that is to be used to irrigate the lands marked "B" on the plat with the water flowing in Lake Fork river from which the appellants now obtain water. It is also true that the water that the intervener seeks to furnish appellants in exchange for the water to be diverted by the former from Lake Fork river at the point marked "3" on the plat cannot be discharged into Lake Fork river at a point above appellants' diverting canal known as the Red Cap canal, but sufficient water to irrigate the lands marked "B" must be discharged into appellants' canal at the point marked "4" on the plat. Counsel for appellants contend that, if the water that the intervener seeks to deliver to appellants were delivered into Lake Fork river at any point above the diverting canal, that is, at any point above the figure "1," and were thus commingled with the waters of Lake Fork river, the exchange would come within both the letter and spirit of the statute, but that, in view that a large portion of the water to be exchanged is to be delivered to appellants into the canal at the point marked "4," therefore the exchange is contrary to the provisions of the statute, and is unauthorized.

Such contention is contrary to the decision of this court in *Salt Lake City* v. *Salt Lake Water & Electrical Power Co.*, supra, and, in our judgment, is also contrary to the very purpose of the statute as well as to the holding of this court in *Spanish Fork City* v. *Spanish Fork, etc., Co.*, supra. 'In the latter case the junior appropriator owned the right to the use of 7 second feet of water, which water, owing to the topography of the country, he could not use to irrigate his lands which were higher up the stream. He therefore discharged 7 second feet of water which he obtained from a source other than that stream into Spanish Fork river and at a point lower down, but still high enough to answer the purpose of Spanish Fork City. After doing that he diverted from a stream which was a tributary of Spanish Fork river at a point much higher up a quantity of water equal to that which he discharged into the river below. Spanish Fork City objected, and, for various reasons, insisted that the subsequent appropriator could not do that under the statute. This court, however, held that the statute authorized just such a use of water to be made. In that case the waters were not commingled in the sense that counsel contend for, but the subsequent appropriator was permitted to exchange the water he turned into the stream below for the water he took out of the tributary higher up. But, in view of the holding in *Salt Lake City* v. *Salt Lake Water & Electrical Power Co.*, and the other authorities cited, it is not necessary to discharge the water into the stream at all. It is sufficient if the water is turned into the canal or ditch of the prior appropriator at a point where he can make full use thereof, and in so doing he is not injured. In every case, therefore, where water is turned into a stream at a point which is below the point where an equivalent amount is diverted from the stream, there is an exchange of water, and, when the water is turned into a canal or ditch of the prior appropriator rather than into the stream itself, there is, and can be, no actual commingling, and in such circumstances no commingling is necessary. The very purpose of the statute is to permit an exchange of water where to do that results in a larger use and where it can be done without injury to the prior appropriator.

The case of *Richmond Irr. Co.* v. *Shaw*, 54 Utah, 379, 181 P. 162, is relied on as sustaining the proposition that water may not be exchanged without the consent of the appropriator. A mere cursory reading of the opinion in that case will disclose that the question here involved was not, nor was it attempted to be, decided. True, the statement is there made that one appropriator of water "had no right" without the first appropriator's "consent to divert the waters from spring No. 3, even though" the first appropriator had been supplied with water from another source. In that case the waters of a particular spring were in question which the claimant and his predecessors in interest had used for many years, and to the use of which the claimant was clearly entitled. Under the facts in that case the waters of the spring, which were being used for culinary and other domestic purposes, could not be taken from the appropriator without his consent. That case was not one coming within the purview of the statute here in question. It was not intended by what was said in the opinion in that case to lay down the rule that water may not be exchanged without the consent of the appropriator. To so hold would be in direct conflict with the purpose of the statute, and would be contrary to the prior decisions of this court, namely, *Salt Lake City* v. *Salt Lake Water & Electrical Power Co.*, and *Spanish Fork City* v. *Spanish Fork, etc., Co.*, supra. The case of *Richmond Irr. Co.* v. *Shaw* is correctly decided in view of the issues there involved, but that case has, and can have, no controlling influence upon the undisputed facts and circumstances of the instant case.

Nor is there any merit to the contention that, if the exchange in this case be permitted, the appellants will be deprived of their vested right to change their point of diversion if they so elect in the future. That question is considered in *Salt Lake City* v. *Utah & S. L. Canal Co.*, and decided against plaintiffs' contention that their right would thereby be invaded. A complete answer to the contention, however, is that appellants' right to change the place of diversion is not an absolute or vested right, but is only a con-

ditional or qualified one. No such change can be made if thereby the public, or any other appropriator, prior or subsequent, is adversely affected. Nor can a prior appropriator prevent a subsequent appropriator from **4** using any of the unappropriated waters of this state to the fullest extent possible merely because the prior appropriator in the future may desire to change his place of diversion. There is nothing made to appear in this case, however, that the appellants ever could or would change their place of diversion from what it now is on Lake Fork river.

Nor is appellants' contention tenable that, if the exchange be made, the right to direct the use of the water as appellants may determine will be lost. It is elementary doctrine in this state that, where there is more than one appropriator on any stream, the measurements and **5** apportionments of the water must be under the control and direction of some disinterested person. This is usually done by a water commissioner appointed by the court, or, under the present law, it may be under the direction and control of the state engineer, who, however, is always under the supervision of the court. It is for that reason that courts usually reserve continuing jurisdiction in such cases, and the decree in this case is to that effect.

Then again, in this state no one can any longer obtain any right to the use of any water from any public stream except upon full notice and a hearing before the state engineer; and any rights that are granted are always granted subject to all prior rights. Appellants cannot, therefore, as suggested by their counsel, lose any of their rights, since no future right can be acquired in any of the waters **6** in question here that is not subject and subordinate to appellants' rights.

In this case it is also important to remember that this is not an application by an appropriator to change his point of diversion which is provided for in section 8 of chapter 67, Laws Utah 1919, but it is an application under Comp. Laws Utah 1917, § 3470, as amended by chapter 67 afore-

said, to which we have hereinbefore referred. What is sought here is precisely what was sought and permitted in the Spanish Fork case, supra, namely, to take appropriated water out of a stream at one point and to discharge into the stream, or into the appropriator's ditch or canal, other appropriated water equal in quality and quantity to the water taken for the use and benefit of the appropriator.

The question of the right to change the point of diversion is, however, merely an incident in this case, and it has been discussed from that point of view. A careful reading of the judgment or decree of the district court discloses that the rights of appellants, and those of appellants' wards, the Indians, have been safeguarded and protected at every point. Indeed, the decree bears ample evidence of meticulous care on the part of both the state engineer and the district court to protect all the rights of the prior appropriators and to enforce such rights promptly, effectually, and unconditionally, if invaded in the future by the intervener or by any one else. Moreover, as already pointed out, the court retains a continuing jurisdiction of the whole matter, and, if therefore it shall be ascertained in the future that the rights of the Indians are not fully protected in any particular, the decree may be amended so as to accomplish that purpose. Then again, the question of compensation to the Indians for lands that may be taken, or damaged by the intervener in constructing and maintaining its proposed canal or ditch is a matter that has not been considered, much less determined. That matter will not be reached until the intervener attempts to construct its proposed canal or ditch. The rights of the Indians, under our Constitution and laws, must be protected in that regard, and there is no doubt whatever but that they will be protected.

In conclusion, it is pertinent to state that in our opinion the conceded facts and circumstances bring this case squarely within both the letter and the spirit of our statute and the former decisions of this court. Indeed, counsel for the appellants have cited no authorities that are to the contrary, and by a somewhat extended independent research

we have not been able to find any. The paramount purpose of our statute and the decisions of this court are to the effect that the waters of this state shall be applied and used so as to produce the greatest possible benefit to the inhabitants thereof, and every appropriator of water must yield to that purpose, if in so yielding all of his rights may be preserved without material injury or damage to him.

The judgment of the district court is in harmony with that purpose, and it therefore should be, and accordingly is, affirmed.

GIDEON, THURMAN, and CHERRY, JJ., concur.

KIMBALL, District Judge, dissents.

WEBER, C. J., did not participate herein.