J. H. CLINE, APPELLANT, v. F. A. STOCK ET AL., APPELLEES.[*]

FILED FEBRUARY 4, 1904.    No. 13,050.

1. **Riparian Rights.** "A riparian's right to the use of the flow of the stream passing through or by his land, is a right inseparably annexed to the soil, not as an easement or appurtenance, but as a part and parcel of the land; such right being a property right, and entitled to protection as such, the same as private property rights generally." *Crawford Co. v. Hathaway*, 67 Neb. 325.

2. ————: SUBSEQUENT APPROPRIATION: PLEADING. A riparian proprietor, whose use of the stream for water power is impaired by subsequent appropriations of the water and whose loss thereby is not offered to be compensated, is not required, in an action to enjoin such appropriation, to set up specifically what rights are claimed by the appropriators severally or jointly. It is sufficient if he set out his own right, its priority and the injury to it, the fact of no compensation for its loss, and in general terms the wrongfulness of the appropriation.

3. ————: PETITION FOR INJUNCTION. It is not a fatal objection to a petition for injunction against a large number of defendants taking water from a stream at many points at long distances from plaintiff's mill, and persisting in doing so, and making arrangements to continue the practice to the injury of plaintiff's mill, without compensation, that it asks no other specific relief than the writ.

[*] Rehearing allowed. See opinion, p. 79, *post*.

APPEAL from the district court for Hitchcock county: GEORGE W. NORRIS, JUDGE. *Reversed.*

*Samuel J. Tuttle* and *A. S. Tibbets,* for appellant.

*F. I. Foss, F. M. Flansburg, W. S. Morlan, Ralph D. Brown* and *Hainer & Hainer, contra.*

HASTINGS, C.

The plaintiff in this action, after describing the character and course of the Republican river, alleges ownership, ever since 1873, by himself and his grantors, of a 200 barrel a day flouring mill erected upon his lands, through and along side which the river flows at Concordia, Kansas, requiring for its propulsion 70 horse power, 200 cubic feet of water a second under an 8 foot pressure; that this was abundantly furnished by the river until the facts complained of; that the mill cost him $25,000 and the water power was of the value of $3,000 a year; that since 1894 there has not been enough water to propel the mill during the months of June, July and August; that its volume has steadily diminished during that time, and for the last two years, including 1901, the river has been, during these months, entirely dry, and that this is because of the "unlawful and wrongful acts of the defendants and each of them"; that they have "diverted the waters of the Republican river and its affluents therefrom, pouring the same into the land adjacent, where they have become absorbed for irrigation purposes"; and plaintiff alleges his damage at $10,000 a year; he sets out that the amount of water taken by each of the several defendants amounts in the aggregate to 317 cubic feet, and 1,459 inches a second, and says this is taken mainly through the months of June, July and August; he says that the defendants have made plans, appliances and arrangements to continue this diversion of the water, and will do so, unless prevented by the court; that such diversion is contrary to the constitu-

tion of the state of Nebraska, and that of the United States, in taking away his riparian rights and so depriving him of his property without process of law; that plaintiff's priority and right to use the water was recognized by local customs, laws and decisions of the courts in the states of Kansas and Nebraska, and no offer of compensation has been made him; that the defendants' acts are contrary to section 2339 of the Revised Statutes of the United States and that this section acknowledges and confirms the plaintiff's rights; that the action for injunction is brought to save multiplicity of suits at law, and also for the reason that plaintiff has no adequate remedy at law. An injunction is asked against all of the defendants, restraining them from diverting the waters of that river and its affluents and not returning the same into the channel.

Separate demurrers were filed by the several parties. Most of them on three grounds: (1) Improper joinder of causes of action; (2) No facts sufficient to constitute a cause of action; (3) Because the petition is for an injunction alone, and shows no ground for one. One of the demurrers adds a fourth ground, a lack of jurisdiction, as it is an attempt to adjudicate matters in dispute between states.

The demurrers were sustained, and plaintiff elected to stand upon his petition, and judgment of dismissal was entered, from which the plaintiff appeals. He insists that his petition disclosed a right to an injunction; that as riparian owner he had the right to the unimpaired flow of the river; that he had such right by prescription dating from 1873; that, if the doctrine of appropriation is held to prevail, his appropriation was prior in time, was the best right, and is protected by the Nebraska and the federal constitutions; that this right has been impaired by the defendants; that his remedy at law is inadequate, and that the interposition of equity is necessary to prevent a multiplicity of suits.

Defendants, on the contrary, assert rights on the basis of the fact that the Republican river is meandered in the

United States survey, and should be held a navigable stream. It is sufficient to say as to this that the petition alleges that it is not a navigable stream, and sets up ownership of its bed and banks in the plaintiff, which is admitted by the demurrer.

The defendants also urge that the common law is in force in Nebraska, except so far as modified by statute, and that the common law permits no appropriation of streams and no prescriptive right as against an upper owner. This seems to be the effect of the holdings in *Clark v. Cambridge & Arapahoe Irrigation & Improvement Co.*, 45 Neb. 798; *Slattery v. Harley*, 58 Neb. 575; *Crawford Co. v. Hathaway*, 67 Neb. 325, and *Meng v. Coffee*, 67 Neb. 500. In paragraph four of defendants' brief, they seek to find under the common law doctrine, that the stream as a whole belongs to each owner and that each has a right to a reasonable use of it, authority for their action in taking, as plaintiff alleges and the demurrers admit, all of the water out of this stream during the three summer months. The general statements of the rights of each riparian owner to a reasonable use of the stream are cited from various text writers and decisions. That any court has ever held that, in the exercise of common law rights, even a riparian owner was at liberty to take out all the water and leave the stream dry for three months in the year, these citations do not show. The most that has been held allowable in any of the cases cited was a reasonable diminution for purposes of irrigation in the amount of flow, and that equity would not enjoin the use of a stream for irrigation, merely that it might run by in unimpaired quantity for one who was making no use of it.

It is urged that the legislature in this state by section 43, article 2, chapter 93*a*, Compiled Statutes (Annotated Statutes, 6797), has provided, that the right to divert unappropriated water of natural streams shall never be denied, and that priority of appropriation shall give a better right between those using water for the same purpose, but that those using water for domestic purposes shall

have preference over all others; and those using it for agriculture have a preference over those using it for manufacturing; that the allegation of the petition that the diversion is unlawful is a mere conclusion; that the diversion of the water is presumed to be in accordance with law, and that, as the petition alleged that the water is "absorbed for purposes of irrigation," it will be presumed to have been taken out under rights derived properly from this state, therefore no right to interfere with it exists on the plaintiff's part. It is urged that the United States statute of 1866 has reference only to the public lands and furnishes no countenance to the riparian rights claimed by plaintiff, in the absence of any allegation bringing those rights under that statute. It is also urged that if there has been any interference with plaintiff's rights his remedy is, in the first place, not by injunction, but by a suit for damages; and, in the second place, he has shown such laches in permitting the irrigation works to go on, that he is entitled to no remedy in equity. It is finally urged that the action is an attack upon the sovereignty of Nebraska; that it is an action brought by one living in Kansas for the diversion of water within the state of Nebraska, and is an attempt by one without the state of Nebraska to assert a right which is in contravention of the laws of this state, and can not therefore be recognized by this state's tribunals. These several reasons may be summarized thus: (1) Use for irrigation purposes by the defendants appears from this petition; such a use by the upper proprietor is reasonable, even if it takes all the water in the stream, as against a lower proprietor who is already using it to propel his mill. (2) The statutes of the state of Nebraska give to the irrigation user priority over the user for manufacturing purposes, and this authorizes a taking of all the water in the stream for irrigation purposes, without regard to the injury that may be caused to lower proprietors, who are already using it for manufacturing purposes. (3) This mill is situated in the state of Kansas, below the point where the stream finally

passes out of the state of Nebraska; and this proprietor outside of the state has no rights in the stream which the legislature of Nebraska must respect or may not authorize Nebraska citizens to disregard. (4) Whatever injury may have happened to the plaintiff, and however perfect his right may be to the water, he has a remedy at law and may not resort to a court of equity to protect it, no matter what the multiplicity of suits which may be thereby rendered necessary at law.

As against these reasons raised by the defendants for refusing to interfere with their use of the water, plaintiff says that it nowhere appears in this petition that defendants are riparian owners, nor that they are taking the water by any right for irrigation or otherwise; that the only allegation on that behalf is that they are taking it out unlawfully and wrongfully and pouring it upon the adjacent land, "where it is absorbed for irrigation purposes," and that, any way, there is and can be no warrant in the laws of Nebraska for such a proceeding; that plaintiff has a vested right under his allegations which could not be taken from him for public purposes without compensation and with which private persons for their own purposes have no right to meddle at all. Plaintiff says that he is asking only for protection to a right as much secured to him by Nebraska laws as if he lived on this side of the state boundary.

It will be seen that the facts in regard to defendants' taking and use of the water do not appear. The only allegation as to that is that they take it out to the extent stated "mainly in the months of June, July and August," and that by "wrongful and unlawful acts," and turn it upon adjacent land, "where it is absorbed for irrigation purposes."

It would seem that the fact of plaintiff's residence beyond the border of this state, and that his mill is located there, ought not to deprive him of any rights which the laws of our state give to a lower riparian owner. Any attempt of our legislature to discriminate against him as compared with resident mill owners would be promptly

declared unconstitutional by the federal courts. Any such determination by the courts would seem to be equally obnoxious to the federal constitution. *Ex parte Virginia,* 100 U. S. 339, 347. It seems clear that the plaintiff should be allowed the same standing as one of our own citizens with a mill on this side of the state line. If he wants more than that, he should have brought his action in some other than a court of this state.

The question then presented on this demurrer is: Does the petition sufficiently disclose a right on plaintiff's part, and a wrong on defendants', to warrant the interposition by injunction which is prayed? The objection that the petition does not sufficiently allege a reasonable use by plaintiff can be upheld only on the theory that no other use is reasonable that interferes with irrigation. The right and reasonableness of use of water power to propel a flouring mill by a riparian owner needs no justification. It has been practiced and protected ever since English law began. The right of plaintiff then must be assumed, unless some stronger claim in defendants appears, or must be assumed.

Was it incumbent on the plaintiff to set out that defendants' claim was by appropriation for irrigation purposes under the Nebraska statute, and negative in advance the existence of such a right? It hardly seems so. The petition sets out a vested right by means of riparian ownership, that such right was in actual use and enjoyment, that without compensation, or tender of compensation, its enjoyment was wrongfully interrupted by defendants. At law this would be sufficient, in default of answer, to warrant the recovery of damages. Why should it not be held sufficient in equity, if the additional facts necessary to confer equity jurisdiction and to warrant an injunction are alleged? It may be granted that the statement that defendants' acts are "wrongful" is a conclusion. It is, however, fairly equivalent to saying they are without right. Is more than such a general negative of defendants' rights required of plaintiff, who sets up the impairment of a clearly recognized right of his own?

It is true that chapter 69, laws 1895, has recognized the appropriation of water for irrigation use as having preference over the use for manufacturing, and of such law this court takes judicial cognizance. It hardly seems, however, that, from an incidental allegation that defendants are wrongfully taking out of the channel and pouring it on the adjacent land, "where it is absorbed for irrigation purposes," we can or should assume that defendants have complied with the law, and have lawfully appropriated the water, and are taking it out under such right.

There seems no doubt that, as defendants' brief reiterates, this state is governed as to water rights by the common law, as modified by statutes. If this plaintiff has set up a right valid at common law, and negatived in general terms the holding of any right by proceedings under the statute on the part of defendants, and without admitting any facts showing such an appropriation by defendants, they should set up such facts if they are relying upon them. The statute giving preference to irrigation rights can only be available to defendants, when the facts showing their rights under it are before the court. Plaintiff has not set them up. He has negatived in general terms their existence. It is hardly probable that the trial court would have sustained any motion to compel plaintiff to set up the particulars of defendants' several claims of right to the water, and negative them specifically in his petition. It does not seem that the trial court should have sustained, or likely that it did sustain, these demurrers because of the lack of such particularity.

It seems that the petition sets out a common law right; that it does not disclose facts on which a defense of the alleged violation of that right can be rested, even if we were to assume that the Nebraska statute could place, and had placed, irrigation rights above mill owners'. It devolved upon the defendants to set up such a defense, if it existed, unless, as defendants claim, the demurrer should have been sustained because of no ground for an injunction, and of that being the only relief specifically

prayed for. It seems probable that this was the ground for the trial court's action.

While the circumstances of this case are somewhat peculiar, the allegations as to the multiplicity of suits seem indisputably sufficient to entitle plaintiff to equitable protection. Not only does the petition allege in general terms the necessity of such interposition of equity, but the specific facts alleged, the number of defendants in this action, the extent of country embraced in their operations, the length of time they have carried them on, the geographical facts which must be judicially recognized, such as the length of the stream and the semi-arid character of the country along its upper course, seem clearly to indicate such a multiplicity of interests as entitled plaintiff to resort to equity. *Shaffer v. Stull*, 32 Neb. 94; *Pohlman v. Evangelical Lutheran Trinity Church*, 60 Neb. 364.

In the case of *Crawford Co. v. Hathaway*, 67 Neb. 325, it is said:

"But where * * * a large number of persons are claiming the right to divert and use the water of a stream, * * * and others as riparian owners whose rights have accrued prior to the statute and have not been divested, we know of no sound reason why a suit in equity to determine and adjust such rights and enjoin interference with those rights by others under a claim of right may not be maintained."

If it be held that a use by defendants for irrigation purposes under a claim of right appears from this petition, then the right to resort to equity follows clearly from the decision in *Crawford Co. v. Hathaway, supra*. Surely, if a party on one side of such a controversy, involving many persons and many conflicting interests, may resort to equity for a determination of his rights, one on the other side may, also. The use of the writ of injunction to protect the owner of real estate from an invasion, under eminent domain, of rights for which no compensation has been provided, is well recognized. 1 Lewis, Eminent Domain (2d ed.), sec. 265, quoting *East & West R. Co.*

*v. East Tennessee, V. & G. R. Co.,* 75 Ala. 275. The author says that this is properly referable to the doctrine that equity, for the protection of both parties, will enjoin unauthorized attempts to invade private rights in vindication of an alleged public one, a doctrine distinctly recognized in this state. *Johnson v. Hahn,* 4 Neb. 139; *Schock v. Falls City,* 31 Neb. 599.

There seems no doubt that the allegations of the petition are sufficient to show a right to the water power on plaintiff's part, and, on their face, sufficient to show an interference with that right by defendants. Doubtless, some 200 miles of the river's course lie between these parties plaintiff and defendant, but, if the plaintiff can establish his allegations as to his troubles and their cause, then defendants should either show a right to take away the water, or obtain one, or else let it go down the river channel.

It is recommended that the judgment of the district court be reversed and the cause remanded for further proceedings according to law.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED.

The following opinion on rehearing was filed January 18, 1905. *Former judgment of reversal vacated and judgment of district court affirmed:*

1. **Riparian Rights:** PETITION: SUFFICIENCY. In an action by a lower riparian owner to enjoin irrigation corporations and others from diverting water from the stream to the injury of his mill, a petition which alleges that the defendants have been maintaining "dams and ditches and other appliances" upon the stream above his mill for seven years, by means of which they have during that time appropriated stated quantities of water for irrigation purposes, does not state a cause of action without alleging facts

showing that such appropriation and use of water by defendants is unlawful.

2. **Use of Waters: Petition to Enjoin.** The allegations of the petition being consistent with the lawful use of the water by the defendants, they will be so construed as against the pleader.

3. ———: ———: **Action for Damages.** Parties who have appropriated water for irrigation purposes pursuant to law, and continued the use of water under such appropriation for more than seven years, can not be enjoined from the continued use of such right by a lower riparian owner whose mill privilege may be injured thereby; his remedy is an action for damages.

### Sedgwick, J.

A general demurrer to the petition was sustained by the court below. The character of the action and the principal allegations of the petition are substantially stated in the former opinion. It appears from the petition that it is sought to enjoin a continuation of acts of the defendants, which have been practiced continuously by them from the commencement of the year 1894, more than seven years before this action was begun. The allegations are that there has been a failure of water in the Republican river, at the mill in question, during the summer months of each year during all that time, and that that failure of water and the damage accruing to the plaintiff therefrom, have been occasioned and produced by the acts of the defendants set forth in the petition; a continuation of which acts it is sought to enjoin. There is no allegation in the petition purporting to explain this delay in commencing these proceedings. This leads us to examine what the petition shows in regard to the nature of these alleged wrongful acts, and the position of the respective parties with relation thereto.

Water for the purpose of irrigation is declared by the statute to be a natural want, and the statute also provides that the water of every natural stream is the property of the public, and is dedicated to the use of the people of the state; and those using water for agricultural purposes shall have preference over those using the same for manufacturing purposes. The statute provides a complete sys-

tem under which the right to use the public waters of the
state must be obtained, and it defines, fixes and regulates
those rights. The state board is given control of the public
waters of the state and when, upon the application of an
individual to appropriate water for agricultural purposes,
the board allows the appropriation and duly adjudicates
the right to the use of a certain quantity of water, the
party who obtains such right, and appropriates and uses
the water thereunder, acquires a vested interest therein.
Canals and other works constructed for irrigation or water
power purposes are declared to be works of internal im-
provement, and the right of eminent domain is extended
to persons and corporations engaged in the construuction
of such works. In *Bronson v. Albion Telephone Co.*, 67
Neb. 111, the court, in speaking of enjoining the telephone
company from injuring private property in the mainte-
nance of its lines, said:

"We do not think public utilities of this kind ought to
be suspended until every abutting owner upon the streets
or highways to be used has been duly appeased. If he has
been substantially or appreciably injured, an action at
law will ordinarily afford him full compensation."

This reasoning applies with greater force to the situa-
tion in this case. This, as is stated in the case last cited,
is the rule where the construction of a railway causes
damage to abutting owners.

"The abutting owners are not made parties to condem-
nation proceedings, nor can they enjoin construction of
the road; but their remedy is in an action at law for dam-
ages. *Republican V. R. Co. v. Fellers*, 16 Neb. 169; *Chi-
cago, K. & N. R. Co. v. Hazels*, 26 Neb. 364; *Atchison & N.
R. Co. v. Boerner*, 34 Neb. 240. The same remedy is em-
ployed where a city, in improving a street, impairs the
easement of the abutting owner. *City of Omaha v. Flood*,
57 Neb. 124."

If these defendants had made due application to the
state board, and had obtained the adjudication of that
board giving them the right to appropriate a given quan-

tity of the public water of the state for irrigation purposes, and, in pursuance of such adjudicated right, had constructed irrigation works, and had, during all that time, actually appropriated and used the amount of water allowed them under such appropriation, in the same manner and to the same extent that they propose to use the water in the future, a lower riparian owner could not enjoin the continued use of such water, but must rely upon his action at law to recover such damages, if any, as he might sustain thereby. We think there can be no doubt of the soundness of this principle.

The important question in this case then is, whether the petition which is demurred to contains allegations which bring the case within the principle above discussed. Upon reexamination of the question we are satisfied that it does. The defendants in the case are Farmers Canal Company, Riverside Canal & Irrigation Company, The Trenton Farmers Irrigation Association, The McCook Irrigation & Water Power Company, and other parties. The petition alleges that all of the defendants, "by reason of dams and ditches, and other appliances, have diverted the waters of the Republican river and its affluents therefrom, poured the same upon the lands adjacent for irrigation purposes, where they have become absorbed"; and it is directly alleged that this action is the cause of the plaintiff's injury. The exact quantity of water that each defendant has diverted, and is diverting, from the stream is stated in the petition.

The plaintiff in an equity case must plead the facts that entitle him to the relief asked. The petition contains no allegation as to the nature and character of the defendant corporations, except those above quoted. Under the rule that the allegations of a pleading must be construed against the pleader, we think that the allegations that these corporations diverted the water from the river and turned it upon adjacent lands for irrigation purposes, and that this is done by them by means of dams and ditches, and other appliances, and that the water is absorbed on these

lands, and that this has been· continued for more than seven years, would require some further allegation from the pleader to show that the existing conditions were such as to entitle him to the injunction asked. The law requires these corporations, before so taking the water for irrigation purposes, to make application to the state board and have their right to do so determined, and the court will not presume that they have not done so in favor of a plaintiff who shows the conditions existing, and fails to show that their use of the water is unlawful. In this view of the proper construction of this petition, the trial court was right in refusing to allow an injunction, and this disposes of the case. We do not find it necessary to examine the other questions discussed by the commissioner in the former opinion, and are not committed to the propositions there advanced.

For the reasons above given, the judgment entered upon the former hearing is vacated, and the judgment of the district court is affirmed.

JUDGMENT ACCORDINGLY.