AMERICAN FORK IRR. CO. et al. v. LINKE et al.

No. 7626. Decided December 21, 1951. (239 P. 2d 188.)

See 67 C. J., Waters, sec. 472. Irrigation waters, changing use of. 30 Am. Jur., Irrigation, sec. 30.

*Clinton D. Vernon,* Atty. Gen., *J. Lambert Gibson,* Asst. Atty. Gen., *C. C. Parsons, Wm. M. McCrea, A. D. Moffat, Calvin A. Behle,* and *Mulliner, Prince & Mulliner,* all of Salt Lake City, for appellants.

*Christenson & Christenson,* Provo, for respondents.

HENRIOD, Justice.

This is an appeal from a Utah County District Court judgment which reversed a State Engineer's order denying plaintiff's application for a change of use as to 1000 acre feet of already appropriated direct flow irrigation water, from an early season use, to storage in a proposed dam for later use in irrgating more valuable later season crops. Defendants attack the judgment on the grounds: 1) that

the Engineer's findings and decision, being those of a trained expert, should not be disturbed; 2) that a review of his findings and decision should be confined to the issues and evidence considered by him, and 3) that the court's finding that defendants' vested rights would not be impaired by granting plaintiffs' application is against the evidence. The judgment is affirmed, each side to bear its own costs.

Plaintiff canal companies distribute appropriated irrigation water of American Fork Creek to their Utah County shareholders according to establshed formulae, in an area simulating a large concave seashell. The slope and natural drainage is toward Utah Lake. Headwaters of the creek rise near plaintiffs' proposed dam in American Fork Canyon about 21 miles from and about 5000 feet higher than the Lake. Water is measured through a weir at the mouth of the canyon. Defendant canal companies operate similarly in adjacent Salt Lake County, their source of appropriated water being Utah Lake, into which any unused water in the creek flows. It is urged by defendants that early season storage of the 1000 acre feet of water for release later, would result in a substantial portion thereof being lost to defendants' source of supply, by evaporation and transpiration at a hotter and dried time, and that such loss would not occur if the water were beneficially used by plaintiffs in the early season as is now customary. It is also contended that withholding such water results in seepage reaching the Lake at a time much later in the year when defendants have no use for it. The water to be stored is that which the plaintiffs would otherwise put to consumptive use during the early part of the irrigation season.

We need not discuss at length defendants' contention that the Engineer's conclusion as to practicability of administering the proposed change should remain inviolate and immune from judicial review or reversal. Recently this court negatived such contentions,[1] announcing that ■

---

[1]*United States* v. *District Court Fourth Judicial Dist.*, 121 Utah 18, 238 P. 2d 1133; this day decided.

the Engineer's findings and decision have a sanctity extending no further than the authority delegated by law to his office. Also that although such findings and decisions, administrative in nature,[2] merit studied consideration and great weight,[3] nevertheless the judiciary is the sole ultimate arbiter of law and fact in water cases,[4] bound neither by the nature, extent or content of his decision, nor as to the character, quantum or quality of proof, evidence or data adduced at hearings before him or accumulated independently by his office. Our Legislature obviously invested him with important but not conclusive discretionary powers and duties deserving of great respect, but as a safeguard against possible injustice, and by plenary review on trial de novo, it also invested the court with the *ultima ratio* and final say as to conflicting contentions of applicant and protestant. For example, where the application is for appropriation of water, the court may receive and consider competent and admissible evidence dehors the record, findings, data or decision developed in the Engineer's office relating thereto, although the court may not transcend the issues raised by the application and consider evidence touching a matter foreign to the application, such as the issue of change of use.

This case is based on its own peculiar facts, and is not a precedent for any where facts may differ. We recognize plaintiffs' duty to prove that vested rights will not be impaired by approval of their application, but we also recognize that such duty must not be made unreasonably onerous,[5] to the point where every remote but presently indeterminable vested right must be pinpointed.

---

[2] *Whitmore* v. *Murray City*, 107 Utah 445, 154 P. 2d 748.

[3] *Garrison* v. *Davis*, 88 Utah 358, 54 P. 2d 439.

[4] *Rocky Ford Irrigation Co.* v. *Kents Lake Reservoir Co.*, 104 Utah 202, 135 P. 2d 108; *Eardley* v. *Terry*, 94 Utah 367, 77 P. 2d 362; *United States* v. *Caldwell*, 64 Utah 490, 231 P. 434; *Little Cottonwood Water Co.* v. *Kimball*, 76 Utah 243, 289 P. 116; *Whitmore* v. *Welch*, 114 Utah 178, 201 P. 2d 954; *Tanner* v. *Bacon*, 103 Utah 494, 136 P. 2d 957.

[5] *Tanner* v. *Humphreys*, 87 Utah 164, 48 P. 2d 484.

And we cannot turn a deaf ear to every request which reasonably appears designed for a more beneficial use of water not impairing vested rights, by saying, as the Engineer in his decision did, that the proposed change *"could interfere substantially with the vested rights of others."*[6]

There is considerable conflicting testimony in the record based on numerous variables, indeterminates, scientific measurements and data which are irreconcilable to such extent that one of appellants' witnesses was constrained to volunteer, "I smile because we have got everything mixed in this case." Contradictory as the evidence is, a definite pattern of substantial evidence is woven in the record justifying the trial court in concluding that plaintiffs had sustained their burden of proof and in concluding that the "approval of the application would not be an infringement of the vested rights of the defendants," such that we feel obliged to affirm the decision.[7] We cannot subscribe to defendants' contention that such conclusion was based solely on a finding that water was wont to spill from Utah Lake and waste into Great Salt Lake.

Some facts seem clear and uncontradicted. From the record, it appears that no one knows, nor can anyone tell how long irrigation water, released early or late in the season, would reach the Lake by seepage. No one knows, nor can anyone tell, whether it *ever* would reach the Lake. In storing the 1000 acre feet of water, the surface area at the dam would be about equal to the increased surface area at the Lake should the same amount of water be placed therein. The evaporation at the higher elevation of the proposed dam admittedly would be less, probably one-half that at the Lake. Surface evaporation on the Lake actually exceeds the amount flowing out of the Lake and available

[6]*Eardley* v. *Terry*, supra.
[7]*Morley* v. *Willden*, 120 Utah 423, 235 P. 2d 500.

to defendants between May and September. Inflows from the area into the Lake are contributed to by many unrelated sources such as American Fork Creek, Battle Creek, Grove Creek, Alpine Creek, Fort Canyon Creek, North Union Canal and the Provo Reservoir Canal, in percentages almost impossible of determination. The Deer Creek project doubtlessly has added to inflow in recent years, and the State Engineer's records, of which we may take judicial notice,[8] bear out the contention that more waters presently are seeping into the Lake from distant watersheds not contributed in former years,—to a point where there may be even additional unappropriated water available.[9] This present flow may be contributing gratuitously to, and actually enlarging appellants' source of supply, the Lake. An expert and competent engineer, who had designed and built the weir in the canyon and who, for 45 years had been thoroughly acquainted with the terrain, natural flows, fluctuations thereof, customs of irrigation in the area, types of crops grown or growable, was of the opinion that problems of administering the storage, measurement and distribution of the water were not unlike those ordinarily found where dams exist, and that vested right would not be impaired by operation of the proposed plan. Experts testifying contra showed less familiarity with such matters than the engineer above mentioned who had seasoned his knowledge with almost a half century's experience.

The State Engineer's decision that administration of the plan would be "impractical to the end that others would be adversely affected" is a gratuity unsupported by any facts in the decision. In truth, the decision as a whole reflects conclusions unsupported by fact. It may be significant that the successor of the State Engineer who authored the decision at no time appeared at the trial to defend with fact or figure the conclusions of his predecessor.

---

[8]*McGarry* v. *Thompson,* 114 Utah 442, 201 P. 2d 288; *Lehi Irrigation Co.* v. *Jones,* 115 Utah 136, 202 P. 2d 892.

[9]*Lehi Irrigation Co.* v. *Jones,* supra.

Plaintiffs' proposal, if completed without impairing vested rights, contemplates the more beneficial use of water, a most desired result fully consistent with progress and change,[10] and reflecting the established policy of this state.[11] In a very scholarly and exhaustive document, counsel for defendants insist that plaintiffs' proposal most certainly would invade defendants' vested rights. If, in executing the plan, the plaintiffs interfere with or diminish the rights of others, a remedy is available,[12] particularly since the trial court approved the application subject to the rights of others and without prejudice thereto, and since approval of plaintiffs' application awards no vested rights[13] but simply allows them to proceed with a plan specifically conditioned by the trial court on respecting the rights of others.[14] The argument that this case may lead to multiplicity of litigation is negatived when it is recognized that each case must rest on its own peculiar facts.[15] Such argument should not foreclose the opportunity *and duty* to accomplish that optimum use of water demanded in this arid region[16] when it appears, as the trial court found, and which we believe the facts tend reasonably to indicate, that defendants will not suffer by operation of the plan.

WOLFE, C. J., and WADE, McDONOUGH and CROCKETT, JJ., concur.

[10]*Seven Lakes Reservoir Co.* v. *New Loveland & Greeley Irrigation & Land Co.,* 40 Colo. 382, 93 P. 485, 17 L. R. A., N. S., 329.

[11]*United States* v. *Caldwell, supra; Little Cottonwood Water Co.* v. *Kimball,* supra.

[12]*Rocky Ford Irrigation Co.* v. *Kents Lake Reservoir Co.,* supra.

[13]*Eardley* v. *Terry,* supra; *Little Cottonwood Water Co.* v. *Kimball,* supra.

[14]*United States* v. *District Court of the Fourth Judicial Dist.,* supra.

[15]Kinney, Irrigation & Water Rights, Vol. II, Sec. 873, p. 1538.

[16]*United States* v. *Caldwell,* supra.