SALMON RIVER CANAL CO., LTD., a corporation, Plaintiff-Appellant,

v.

BELL BRAND RANCHES, INC., a Nevada Corporation, and J. K. Wheeler, an Individual, and Wheeler Machinery Company, a corporation, a co-partnership, dba W. D. Ranching Co., Defendants-Appellees.

No. 75–2462.

United States Court of Appeals, Ninth Circuit.

Nov. 21, 1977.

Rehearing and Rehearing En Banc Denied Jan. 13, 1978.

Lloyd J. Webb (argued), of Pike, Burton & Carlson, Twin Falls, Idaho, for plaintiff-appellant.

Irwin Aarons (argued), Milton Manoukian (argued), Carson City, Nev., John C. Miller (argued), Elko, Nev., for defendants-appellees.

Before KILKENNY and ANDERSON, Circuit Judges, and SCHWARZER,* District Judge.

J. BLAINE ANDERSON, Circuit Judge:

Appellant, the Salmon River Canal Co., an Idaho corporation owning ranch land in Nevada, brought a diversity action in the federal district court in Nevada seeking to enjoin appellees, Bell Brand Ranches, Inc. and J. K. Wheeler and Wheeler Machinery Company, from pumping water from wells located on neighboring lands. The district court granted appellees' summary judgment motions and appellant timely filed this appeal. Our jurisdiction rests upon 28 U.S.C. § 1291.

Roland D. Westergard, the Nevada State Engineer, was permitted intervention by the District Court and urges affirmance of the District Court judgment.

The essential facts are not disputed and disclose that appellant, during the 1940's, acquired several ranches in the Salmon River drainage in Nevada. In an effort to settle years of bickering over water rights, appellant brought an action in 1950 in the federal district court in Nevada against the other ranchers in the area, including the predecessors in interest of appellees. In 1953, a judgment was entered embodying the terms of a settlement agreement the parties had reached apportioning the water of the Salmon River and its tributaries.

The judgment provided that the predecessors in interest of J. K. Wheeler and Wheeler Machinery Co. could divert as much water from Shoshone Creek, a tributary of the Salmon River, as they needed for household purposes and for irrigation of 424 acres specifically described in the judgment. The judgment, an unusual one in Western water law, permitted the use of as much water as desired as long as it was confined to the specified acreage. Similar provisions were made with respect to the appropriation of water to irrigate a certain specified acreage owned by the predecessors in interest of Bell Brand Ranches. The judgment also adopted an Opinion and Order of the State Engineer of Nevada to the effect that "the waters of the Salmon River (sometimes referred to as Salmon Creek or Salmon Falls Creek) and its tributaries in Elko County, Nevada, are fully appropriated and that no further permits will be granted for irrigation use on the stream system within the State of Nevada." The judgment also, by its terms bound the successors in interest of the lands described in the judgment and, finally, the judgment decreed:

* The Honorable William W. Schwarzer, United States District Judge for the Northern District of California, sitting by designation.

"31. This Court shall retain jurisdiction over matters of interpretation of this decree and matters relating to the administration and enforcement thereof."

In 1966, J. K. Wheeler and Wheeler Machinery Co. applied to the State Engineer of Nevada for permission to pump water from a well to irrigate 240 acres. In 1967, J. K. Wheeler and Wheeler Machinery Co. filed a second application to pump water from a second well to irrigate 400 acres. The land to be irrigated under both applications did not lie within the specified acreage described in the 1953 judgment. In 1967, the predecessor in interest of Bell Brand Ranches likewise applied for permission to use well water to irrigate lands outside the specified acreage described in the 1953 judgment. Notice of all three applications, including a general description of the lands to be irrigated and a listing of the source as underground, were published in a local newspaper. No timely protests were filed to any of the three applications and the State Engineer granted the permits "subject to all existing rights on the source."

On July 16, 1971, appellant brought the present action, contending that the underground waters were tributary to the Salmon River and that the use of such waters on lands other than those specifically described in the 1953 judgment interferes with appellant's water supply and is a violation of the 1953 judgment.

As stated, the district court granted appellees' summary judgment motions. Essentially, the basis of the district court's ruling was that when appellees filed their applications for permits to appropriate water, and when notices of these applications were published the appellees gave notice of two claims: first, that there were unappropriated waters available for appropriation [1] and, second, that the appellant intended to use these waters to irrigate lands other than those described in the 1953

judgment. Further, that when the State Engineer, pursuant to N.R.S. § 533.370(4) (see *infra* p. ——), issued the permits to appellees he "necessarily had to find that the underground source was not tributary to the stream system because he knew, and, in fact, had specially declared in 1952 that the waters of the Salmon River and its tributaries are fully appropriated." The court ruled that since appellants had failed to protest the applications or to appeal from the State Engineer's determination, that the present suit constituted a collateral attack upon the State Engineer's determination and that said determination was res judicata and not subject to collateral attack.

■ We believe that the district court erred in giving conclusive effect to the permit granted by the State Engineer. Our review of Nevada's statutory scheme and the relevant general principles of water law of the Western States convinces us that a water permit is an administrative tool only for the use of the State Engineer in administering the State's water. We do not believe that as an administrative tool it can be binding or conclusive on any party where it is asserted that pre-existing rights and subsequent appropriations conflict. In reaching this conclusion we bear prominently in mind this Circuit's rule that we pay great deference to the district court's determination of state law and do not reverse unless convinced that the decision below was clearly erroneous. *d'Hedouville v. Pioneer Hotel Co.*, 552 F.2d 886, 895 (9th Cir. 1977). In this case we have an abiding conviction that the district court was wrong in its conclusion. Our review of the record discloses that many of the statutory sections and cases discussed in this opinion were never called to the attention of the district court.

We start our analysis with a review of the Nevada statutory scheme regarding

---

1. This conclusion by the district court does not necessarily follow, for N.R.S. § 534.110(5) states:

"Nothing herein shall be so construed as to prevent the granting of permits to applicants later in time on the ground that the diver-

sions under such proposed later appropriations may cause the water level to be lowered at the point of diversion of a prior appropriator, so long as the rights of holders of existing appropriations can be satisfied under such express conditions."

water rights. We initially note that the provisions relative to permit application proceedings are found under a different subchapter heading from those dealing with the adjudication of vested water rights. Compare N.R.S. § 533.325 et seq. with N.R.S. § 533.090 to § 533.320, inclusive. Although this fact is by no means conclusive of the issues before us, it is some evidence that the drafters felt that the two proceedings were distinct.

■ Turning first to the permit application provisions (N.R.S. § 533.325, et seq.), we believe that the approval of an application for an appropriative permit, although involving some discretion under statutory criteria, is largely ministerial. By N.R.S. § 533.370.1 the Nevada Legislature has directed, in pertinent part, that:

"1. Except as provided in subsection 2, [not relevant to our discussions] the state engineer *shall* approve *all* applications made in proper form where all fees, as provided in this chapter, have been paid which contemplate the application of water to beneficial use, and where the proposed use or change does not *tend* to impair the value of existing rights, or to be otherwise detrimental to the public welfare." (emphasis added)

This provision contemplates that the only determination made by the State Engineer, other than proper form and payment of fees, is one of a "tendency" only not to impair existing rights. A mere "tendency" could not be a final determination in the res judicata or collateral estoppel sense as applied in judicial and administrative adversarial proceedings. The determination of whether or not there is an actual conflict in existing rights is left open to future determinations of relative rights as provided for by other provisions of the statutory scheme.

■ The explicit condition of the permits granted in this case, that it is "subject to existing rights on the source," also convinces us that the permits granted were not intended to be conclusive. This language is mandated by N.R.S. § 533.430(1) which states in pertinent part:

"1. Every permit to appropriate water, and every certificate of appropriation granted under any permit by the state engineer upon any stream or stream system which shall have been adjudicated under the provisions of NRS 533.090 to 533.525, inclusive, shall be, and the same is hereby declared to be, subject to existing rights and to the decree and modifications thereof entered in such adjudication proceedings, and the same shall be subject to regulation and control by the state engineer and the water commissioners in the same manner and to the same extent as rights which have been adjudicated and decreed under the provisions of this chapter. . . . . "

This section is further evidence that the permit application proceeding was not considered to be an adjudication of the relative water rights but rather only for the administrative use of the State Engineer to aid in his supervision of the state's waters.

We are mindful of the language in N.R.S. § 533.370(4) which states:

"4. Where there is no unappropriated water in the proposed source of supply, or where its proposed use or change conflicts with existing rights, or threatens to prove detrimental to the public interest, the state engineer shall reject the application and refuse to issue the permit asked for."

We believe that a determination made under this section is solely for the administrative use of the State Engineer and highlights the importance of the language "subject to existing rights on the source." If it may develop that there is in fact no unappropriated water on the source or the proposed use will conflict with existing rights, the contrary prior determination of the State Engineer will not defeat the interests of the prior water right holder for he is still protected by the language "subject to all existing rights on the source." *See Cappaert v. United States*, 426 U.S. 128, 146–147, 96 S.Ct. 2062, 48 L.Ed.2d 523 (1976).

Using N.R.S. § 533.370(4), appellees contend that since the State Engineer could not have issued the permit if there was no

unappropriated water in the source, then by his grant of the permit the State Engineer "necessarily" determined that the underground waters were not tributary to the surface waters of the Salmon River. The district court accepted this contention. However, there is nothing of a factual nature in this record that supports this conclusion. Whether or not the two sources are interdependent or independent of each other, and if interdependent, what effect pumping from the ground source will have on the existing surface rights is virtually the entire thrust of appellant's present claim. Yet, we are not referred to any adversary proceeding either before the State Engineer or any court of competent jurisdiction where this issue has been conclusively litigated.

There is evidence in this record that the alleged determination "necessarily" made is at odds with a subsequent opinion of the State Engineer. At pp. 1035–1937 of the record there is an opinion and ruling of the State Engineer dated May 6, 1971, dealing with well permits appropriating underground waters in the same Salmon River basin which, by direct inference, holds that these underground waters are tributary to the Salmon River, but nonetheless the permits were issued on a *de minimis* theory. This finding that underground waters were tributary directly conflicts with the State Engineer's issuance of the permits in this case.

It cannot be assumed, as argued by appellees and intervenor, that the October 6, 1952, unilateral opinion and order of the State Engineer, declaring that the waters of the Salmon River and its tributaries were fully appropriated, did not include underground water, for that assumption begs the very question at issue in this case, i. e., what is the meaning of "tributaries" as used in the 1952 agreement, the 1952 opinion of the State Engineer and the 1953 decree?

We also note that there is no statute, called to our attention or found in independent search, that requires a protest at the peril of losing pre-existing rights by failing to protest. Nor has any case been brought to our attention, either in Nevada or from any of the arid Western States, which holds that a failure to protest a permit application will render the determinations made in the application final and conclusive to the extent that they may impair or obliterate pre-existing rights.

Our review of the Nevada permit procedures convinces us that an issued permit creates only a public record of a claimed right for water use administration. It does not create a right as against prior "existing rights on the source."

Our conclusion is also fortified by a review of the adjudication of vested water rights provisions of the Nevada Code. It is significant that the Nevada statutory scheme contemplates an administrative determination of the relative rights of water right claimants on a stream or stream system under N.R.S. § 533.090,[2] et seq. Under these provisions the administrative determination is only a stepping stone into the judicial system, for such "determination, when filed with the Clerk of the court, shall have the legal effect of a complaint in a civil action." N.R.S. § 533.160(1). The court then, after notice, conducts a hearing,

---

2. N.R.S. § 533.090 provides:

"1. Upon a petition to the state engineer, signed by one or more water users of any stream or stream system, requesting the determination of the relative rights of the various claimants to the waters thereof, the state engineer shall, if upon investigation he finds the facts and conditions justify it, enter an order granting the petition and shall make proper arrangements to proceed with such determination.

"2. The state engineer shall, in the absence of such a petition requesting a determination of relative rights, enter an order for the determination of the relative rights to the use of water of any stream selected by him, commencing on the streams in the order of their importance for irrigation. As soon as practicable after the order is made and entered, the state engineer shall proceed with such determination as provided in this chapter.

"3. A water user upon or from any stream or body of water shall be held and deemed to be a water user upon the stream system of which such stream or body of water is a part or tributary."

taking such testimony as necessary, and then affirms or modifies the State Engineer's order. The Code also provides that the decree entered by the court "shall be final and shall be conclusive upon all persons and rights lawfully embraced within the adjudication . . . ." N.R.S. § 533.-210(1). There is no allegation or proof that any such proceeding has been requested or undertaken with respect to the waters in the stream system in question here. The existence of this administrative method for determination is further convincing evidence that the mere application and permit procedures of the Nevada Code were never intended to have the conclusive effect now asserted by appellees.

■ The Nevada Code also provides that a suit may be brought in state district court for a determination of relative rights. N.R.S. § 533.240.[3] This section also provides that "[t]he court may at any time transfer the suit to the state engineer for determination as provided in this chapter." (emphasis added) N.R.S. § 533.240(4). This discretionary provision discounts any notion, alternatively relied upon by the district court in this case, that the State Engineer has primary and exclusive jurisdiction. This view that the State Engineer does not have exclusive and primary jurisdiction is fortified by the plain language of N.R.S. § 533.310 which recognizes that adjudications may have taken place in a suit in the state district court "in which suit [district court adjudication where a final decree has

been entered] the adjudication and determination was *not* had in the manner provided in N.R.S. §§ 533.090 to 533.265, inclusive, . . . ." (emphasis supplied) Additionally, the state court appellate review procedures, specifically relied upon by appellees in this case to oust the federal district court of jurisdiction, also provide that "on stream systems where a decree of court has been entered, the action shall be initiated in the court that entered the decree." N.R.S. §§ 533.450(1). This provision appears to recognize the continuing jurisdiction of a court to construe and effectuate its own decrees. For stronger reasons, this result must follow where, as here, the court has expressly reserved jurisdiction to do so.

■ We believe that it is obvious from our comparison of the permit application provisions and the adjudication provisions that each proceeding is distinct with different effects attaching to each. Only when an adjudication of relative rights is undertaken in accordance with N.R.S. § 533.090, et seq., or by institution of a suit in state district court as envisioned by N.R.S. § 533.-240 can a determination made thereunder be given a conclusive effect. The permit application proceedings do not have such conclusive effect and can only attain that status after being subject to the above-described adjudication proceedings.

We also observe that our conclusion is shared by the commentators. *See* 1 Hutchins, Water Rights Laws in the Nineteen Western States, p. 338 (1971);[4] 2 Weil,

---

**3.** N.R.S. § 533.240 provides:

"1. In any suit brought in the district court for the determination of a right or rights to the use of water of any stream, all persons who claim the right to use the waters of such stream and the stream system of which it is a part shall be made parties.

"2. When the suit has been filed, the court shall direct the state engineer to furnish a complete hydrographic survey of the stream system as provided in N.R.S. 533.100 in order to obtain all physical data necessary to the determination of the rights involved.

"3. The cost of the suit, including the costs on behalf of the state and of the surveys, shall be charged against each of the private parties thereto based on a determination by the court of the relative merits of the claims

made by each of the private parties. The court may assess and charge against any party at any time during the suit an equitable amount to pay the costs of the survey upon its approval of an itemized statement therefor submitted by the state engineer.

"4. The court may at any time transfer the suit to the state engineer for determination as provided in this chapter."

**4.** In his treatise Mr. Hutchins states at page 338:

"The conclusion of the administrator that the permit applied for will or will not impair existing water rights is not conclusive or binding on any party.[559] It is made for the administrative use of the State agency in passing on the application pending before it. This decision is subject to review in the

Water Rights in the Western States, § 1194, pp. 1105–1106 (1911);[5] and 3 Kinney, Irrigation and Water Rights, pp. 2463–2464 (2nd Ed. 1912).[6] Mr. Hutchins, in his treatise, specifically refers to the Nevada water code, and states:

> "The original water administration law of Nevada contained a provision based on those of Wyoming and Nebraska purporting to make the State Engineer's determination of water rights conclusive, subject to the right of appeal. This was believed by a majority of the Nevada Supreme Court to be unconstitutional.[476] The law was promptly changed by the legislature to conform to the Oregon system in which judicial as well as administrative process is requisite to the effectiveness of the determination.[477] The amended Nevada procedure was held valid.[478]"

1 Hutchins, *supra*, at 319–320.[7]

courts, in which the matter of impairment of existing rights may be judicially determined as between the conflicting claimants.

"The State Engineer is an administrative, not a judicial officer. In deciding whether an application to appropriate water should be approved or rejected, he exercises an executive function— to ascertain for his own guidance whether there is reason to believe from the evidence that there are unappropriated waters in the proposed source of supply which can be appropriated without impairing existing rights.[560] This determination merits consideration by the judiciary, but it has no binding force on the final determination of the latter.[561] But even if a permit should be issued, and the administrative act be not overturned by the reviewing court, the permit still would be junior to all preexisting rights of appropriation that attach to the same source of supply. An attempt to exercise it in contravention of these preexisting rights would be subject to injunction."

The corresponding footnotes are:

[559] *Motl v. Boyd,* 116 Tex. 82, 126–127, 286 S.W. 458 (1926).

[560] *Bullock v. Tracy,* 4 Utah 2d 370, 373, 294 P.2d 707 (1956).

[561] *American Fork Irr. Co. v. Linke,* 121 Utah 90, 93–94, 239 P.2d 188 (1951).

**5.** It is found in Mr. Weil's treatise that:

> "Since the authority of the water officials is administrative and not judicial, and they have no power to impair vested rights, their decision as to what existing rights are is not conclusive."
>
> \* \* \* \* \* \*
>
> ". . . not only may a party feeling himself aggrieved by the State Engineer's action appeal therefrom in the method usually allowed by these statutes, but the action of the State Engineer is open to judicial inquiry in any other proceeding in court, such as an injunction against a party holding the State Engineer's permit, whether the decision of the State Engineer is directly appealed from or not. . . . The hearing before the State Engineer is *ex parte* and administrative only.[21] "

The corresponding footnote is:

[21] *Waha, etc. Co. v. Lewiston Co.* (Idaho), 158 F. 137.

**6.** Mr. Kinney states in his treatise that:

> "Although it is held by the Supreme Courts of all the States which have adopted the laws of State control that the State Engineer and the Governing Board have only ministerial, administrative, or executive powers under the law, these powers are judicial in character or at least quasi-judicial.
>
> \* \* \* \* \* \*
>
> "As discussed in the preceding section, the officers under the laws of State control having but ministerial, administrative, or executive powers, it therefore follows that although they are at times given quasi-judicial powers, their decisions are not binding upon the courts.[1] And it may be said in general that their decisions may be attacked directly, collaterally, or by appeal, and when so attacked, the question is tried *de novo* by the courts."

The corresponding footnote is:

[1] *Farm Investment Co. v. Carpenter,* 9 Wyo. 110, 61 P. 258, 50 L.R.A. 747, 87 Am.St.Rep. 918; *Willey v. Decker,* 11 Wyo. 496, 73 P. 210, 100 Am.St.Rep. 939; *Ryan v. Tutty,* 13 Wyo. 122, 78 P. 661; *Whalon v. North Platte etc. Co.,* 11 Wyo. 313, 71 P. 995; *Waha etc. Co. v. Lewiston etc. Co.,* 158 F. 137; *Speer v. Stephenson,* 16 Idaho 707, 102 P. 365.

But see *Crawford Co. v. Hathaway* (Hall), 60 Neb. 754, 84 N.W. 271; *Id.,* 61 Neb. 317, 85 N.W. 303; *Id.,* 67 Neb. 325, 93 N.W. 781, 60 L.R.A. 889, 102 Am.St.Rep. 647; *Rasmussen v. Blust,* 85 Neb. 198, 122 N.W. 862, 133 Am.St.Rep. 650; *Id.,* 83 Neb. 678, 120 N.W. 184; *Cline v. Stock,* 71 Neb. 70, 98 N.W. 454, 102 N.W. 265; *McCook Irr. Co. v. Crews,* 70 Neb. 115, 102 N.W. 249; *Farmers' Canal Co. v. Frank,* 72 Neb. 136, 100 N.W. 286.

**7.** The corresponding footnotes are as follows:

[476] *Ormsby County v. Kearney,* 37 Nev. 314, 355–392, 142 P. 803 (1914).

[477] Nev.Laws 1915, ch. 253.

[478] *Vineyard Land & Stock Co. v. District Court,* 42 Nev. 1, 14–26, 171 P. 166 (1918); *Bergman v. Kearney,* 241 F. 884, 906, 908–910 (D.Nev.1917).

**1251**

As stated earlier in this opinion, we have found no case directly in point, either pro or con. However, in our review of the case law we have uncovered cases in which the language used inferentially supports our view. Such cases include: *Glenn Dale Ranches, Inc. v. Shaub*, 94 Idaho 585, 494 P.2d 1029 (1972);[8] *City of Albuquerque v. Reynolds*, 71 N.M. 428, 379 P.2d 73 (1963);[9] *Little Cottonwood Water Co. v. Sandy City*, 123 Utah 242, 258 P.2d 440 (1953);[10] *Lockwood v. Freeman*, 15 Idaho 395, 98 P. 295 (1908);[11] *United States v. District Court*, 121 Utah 1, 238 P.2d 1132 (1951);[12] and *American Fork Irr. Co. v. Linke*, 121 Utah 90, 239 P.2d 188 (1951).[13]

One case found in our search is more closely in point and deserves separate discussion. In *Chappellet v. Birbeck*, 72 Nev. 126, 296 P.2d 946 (1956), the lessors of certain farm lands brought a damage action against the lessees for a breach of the lease. The lessees had previously notified the lessors that they were electing to terminate the lease, relying upon a provision of the lease that gave them such right "[i]n the event that there is an insufficient supply of water . . . to properly irrigate." The lessors had a water right appurtenant to the lands in question to divert 5 c. f. s. of underground water. The lessees produced expert testimony at trial that the underground source was only capable of providing no more than .085 c. f. s. of water, which was insufficient to irrigate. The lessors contended that their water right gave them the right to pump 5 c. f. s. of water and that it was error for the court to receive lessees' expert testimony as being "an improper attack upon their water right and upon the determinations of the state engineer upon which it was based." The Supreme Court of Nevada responded:

> "Counsel for appellants appear to lay special stress upon the fact that the appellants received a license from the state engineer to appropriate water from said stream. There is nothing in that contention whatever, as it is clearly shown that all of the waters of said creek had been appropriated by the respondent and his grantors long before any license was applied for by the appellants from the state engineer. The state engineer has no authority to deprive a prior appropriator of water from any streams in this state, and give it to any other person. Vested rights cannot thus be taken away." 98 P. at 296.

**8.** In *Glenn Dale Ranches*, the Idaho Supreme Court stated:
> "Nor does existence of a permit dating to 1930 establish a prior appropriation. The permit evidences the state's consent to a proposed diversion, but it does not prove the fact of diversion or of application of the water diverted to a beneficial use." 494 P.2d at 1031.

**9.** In this case the Supreme Court of New Mexico stated:
> "In the western states, where the public waters are held subject to use by prior appropriators, it has always been the law that a prior appropriator from a stream may enjoin one from obstructing or taking waters from an underground source which would otherwise reach the stream and which are necessary to serve the stream appropriators' prior right." [cites omitted] 379 P.2d at 79.

**10.** The Supreme Court of Utah stated:
> "Here we are concerned only with whether the application to appropriate should be approved. The effect of such an approval is to allow the applicant to proceed with his plans to try to appropriate new water. It does not adjudicate that there are unappropriated waters in the source claimed nor that the proposed plan or system will have the effect of producing such waters. It merely has the effect of allowing the applicant to proceed with their plans to appropriate unappropriated waters." 258 P.2d at 444–445.

**11.** In *Lockwood, supra*, the Idaho Supreme Court stated:

**12.** The Supreme Court of Utah stated:
> "Whether or not we call the engineer's decision administrative and the district court's decision judicial, no rights to the use of water accrue by the mere approving or rejecting of an application, the only thing thereby determined is whether the applicant may proceed in accordance with the statute to perfect the right applied for." [cite omitted] 238 P.2d at 1136.

**13.** The Supreme Court of Utah stated:
> "Also that although such findings and decisions, administrative in nature, merit studied consideration and great weight, nevertheless the judiciary is the sole ultimate arbiter of law and fact in water cases, bound neither by the nature, extent or content of his decision, nor as to the character, quantum or quality of proof, evidence or data adduced at hearings before him or accumulated independently by his office." 239 P.2d at 190–191.

"Defendant's evidence was no attack upon lessors' *water right*. The evidence served simply to establish factually the extent of the limitations which the certificate recognized to exist."

[emphasis in original] 296 P.2d at 949.

In the present case, one of the limitations of the permit issued was that it is "subject to all existing rights on the source." Presumably, appellant's proof will attempt to demonstrate this limitation by showing that the entire "stream system" mentioned in the 1952 agreement and the 1953 decree included the underground source by being interdependent. This proof would not attack appellees' permits, as such, but would only demonstrate its limitations. If successful, appellants would be entitled to injunctive relief to prevent appellees from interfering with their prior existing rights on the source and the use of such water on lands not mentioned in the decree.

Finally, we do not accept the reliance placed by appellees and intervenor on three Nevada Supreme Court decisions. *Ruddell v. Sixth Judicial District Court*, 54 Nev. 363, 17 P.2d 693 (1933); *Jahn v. Sixth Judicial District Court*, 58 Nev. 204, 73 P.2d 499 (1937), and *In re Determination of Relative Rights: Franktown Creek Irr. Co. v. Marlette Lake Co.*, 77 Nev. 348, 364 P.2d 1069 (1961). All three of these cases are distinguishable and inapplicable to the controversies in this appeal. In *Ruddell, supra*, the Nevada Supreme Court affirmed the binding and conclusive effect of the procedures similar to N.R.S. § 533.090 *after* full adjudication of relative rights by the district court. No issue was presented as to the binding and conclusive effect of the statutorily separate application and permit procedures. *Jahn, supra,* is likewise distinguishable. The *Franktown* case, like *Ruddell* and *Jahn*, also involved the statutory procedure for determination of relative rights in a water source under N.R.S.

§ 533.090. Nothing said in any of these cases lends itself to the conclusion that a mere permit issued by the State Engineer is a binding and conclusive determination of relative rights of water users with existing rights on the source. The failure to "protest" an application or the effect thereof was not discussed or even mentioned in any of the three cases.

We do not believe that our holding does violence to Nevada's comprehensive water administration code nor the reliance which the Nevada legislature places upon the expertise of the office of the State Engineer. Indeed, state and federal district courts are invited to employ that expertise in water right determinations, *see* N.R.S. § 533.175, § 533.180 and § 533.240(4), regardless of which determination procedure is used, judicial or administrative. However, this reliance does not include the power to render final and conclusive determinations regarding the relative rights of water users.

Accordingly, the order of the district court, granting appellees' summary judgment motion, is REVERSED and REMANDED for further proceeding consisting with the views expressed herein.[14]

SCHWARZER, District Judge, concurring:

I concur in the result but for different reasons. Although I have no quarrel with Judge Anderson's excellent opinion, I believe that it is an unnecessary intrusion into Nevada water law.

The question before the court is whether plaintiff's claim that defendants violated the 1953 decree could be determined on motion for summary judgment. Inasmuch as that claim involves (1) factual issues concerning the interpretation of the language of the decree in the light of evidence of the intention of the parties, and (2) fac-

---

14. We also note that the same result could be obtained by treating the grant of water permit as analogous to a default judgment. See *Cromwell v. County of Sac*, 94 U.S. 351, 356 (1877); Restatement of Judgments (Second) § 68, Comment e (Tent.Draft No. 4, 1977); 1B Moore's

Federal Practice, ¶ 0.444[1] at pp. 4002–4003 and ¶ 0.444[2] at p. 4006 (2nd Ed. 1948). However, we prefer to rest our disposition on the analysis of the Nevada statutory scheme set forth in the body of this opinion.

tual issues concerning the effect of defendants' taking of water on plaintiff's rights, it cannot be said that there are no genuine issues of material fact to be tried. If, upon remand, the trier of fact determines, as well it might, that the parties to the 1953 decree intended to allocate *all* of the available waters, including underground water although not expressly mentioned, then the defendants' taking of such water may violate the decree, regardless of whether it is done pursuant to subsequently issued Nevada permits. Those permits clearly cannot abrogate rights plaintiff may have acquired by reason of the 1953 decree. In those circumstances, therefore, the issue addressed in the court's opinion would not have to be reached.

While I agree that it is desirable for the appellate court to provide the lower court with guidance upon remand, there are compelling policy reasons against doing so in this case. The procedures governing appropriation of water are peculiarly creatures of state law. They are the product of years of political and legal conflict and represent a delicate compromise of claims to what, particularly in the Western states, is a scarce resource. Federal courts should be slow to intrude and risk disruption of state efforts to maintain coherent policies with respect to a matter of substantial public concern. Cf., *Colorado River Water Cons. District v. United States*, 424 U.S. 800, 814–816, 820, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). I can see no necessity for doing so in this case, at least at this time.